RICKETSON, Appellant, vs. GALLIGAN and wife, Respondents.

*January 11 — February 5, 1895.*

*Adverse possession: Character of entry: Conveyance to and by* de facto *corporation: Estoppel.*

1. Whether an entry by one person upon the lands of another without any agreement is an ouster of the legal possession arising from the title or is in subordination to such title depends upon the intention with which the entry is made and is usually a question of fact for the jury.

2. Where land is conveyed by the owner to a *de facto* corporation, which thereupon claims it as a corporation and afterwards conveys it, the title passes to its grantee, as against one whose only claim to the land is based upon an alleged adverse possession not founded on any written instrument.

3. The parties to an action of ejectment had executed a written agreement by which defendant was to hold the premises under the plaintiff as the owner thereof and as his tenant and to vacate upon six months' notice, and upon such notice being given was to have the right to remove the buildings on the premises within six months. *Held*, that defendant was estopped thereby to deny that plaintiff was the owner of the land.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This is an action of ejectment, commenced September 2, 1892. The complaint is in the statutory form. The defense is a general denial, and twenty-six years' adverse possession not founded upon any written instrument.

On the trial the evidence of title on the part of the plaintiff consisted, among other things, of a patent dated March 3, 1843, from the United States to Joel S. Wilcox, for lot 4, section 4, township 6 N., range 22 E., 53½ acres; a deed from Joel S. Wilcox and wife to Alfred B. Brittain, dated June 15, 1854, for 32.07 acres, undivided, of said lot; a mortgage, dated June 19, 1854, upon the lands last described, from Alfred B. Brittain back to Joel S. Wilcox; a deed from Alfred B. Brittain and wife to E. F. Bishop, John W. Stewart, and Levi Blossom, dated October 4, 1854, for the same land last described; a deed from Levi Blossom and wife to John W. Stewart of one third of the same land, dated January 16, 1857; a deed from John W. Stewart to said Bishop of one sixth of the same land, dated December 16, 1857; a deed from said Bishop and wife and said Stewart and wife to the Milwaukee & Chicago Railroad Company of the 32.07 acres, undivided, dated December 29, 1862; an assignment of said Wilcox mortgage from Wilcox to the Swedes Iron Company, dated May 11, 1865; a sheriff's deed, on the foreclosure of that mortgage, to Havens Cowles, dated January 5, 1867, reciting, among other things, that the Swedes Iron Company was plaintiff, and Alfred B. Brittain, Milwaukee & Chicago Railroad Company, Chicago & Milwaukee Railway Company, Chicago & Northwestern Railway Company, Francis H. Palmer, trustee, city of Milwaukee, E. Ferris Bishop, John W. Stewart, Charles L. Frost, trustee, Amosa Stone, Jr., and Frederick Schucharott, trustee, were defendants; a deed from Havens Cowles and wife to Swedes Iron Company, conveying said premises, dated December 16, 1867; articles of incorporation of the

Swedes Iron Company, March 30, 1854, under and by virtue of ch. 249, P. & L. Laws of 1854; a deed from the Swedes Iron Company to E. B. Ward of the same premises, dated June 29, 1869; the last will and testament of E. B. Ward, probated, and an executor's deed from O. W. Potter, executor of the last will and testament of E. B. Ward, deceased, to Burt, Tweedy, and Keenan, trustees, and North Chicago Rolling Mill Company, conveying all of said lot 4 except portions set off to Raymond and Wilcox and Kennett in partition, one half to the trustees, and one half to the North Chicago Rolling Mill Company; certificate of appointment of Bennett and Hannah as trustees in place of Tweedy and Burt; a deed from Keenan, Bennett, and Hannah, trustees, to North Chicago Rolling Mill Company, dated September 15, 1885, conveying trustees' undivided one-half of last-described premises; articles of consolidation, dated May 2, 1889, by which the North Chicago Rolling Mill Company and the Union Steel Company united and created a consolidated corporation known as the Illinois Steel Company, and respectively conveyed to said consolidated corporation all their property, rights, and franchises; a deed from the Illinois Steel Company to the plaintiff, dated August 1, 1890, conveying the premises in dispute and other premises.

The plaintiff also introduced in evidence a written agreement signed by himself and by the defendant *Thomas Galligan*, of which the following is a copy, to wit:

"I hereby agree to hold the house and premises now occupied by me on a part of lot 4, sec. 4, T. 6 N., R. 22 east, in the 12th ward of the city of Milwaukee, Wisconsin, under *James C. Ricketson*, the owner thereof, as his tenant, and agree to vacate the same at any time on six months' notice; and upon said notice being given I shall have the right to remove said building within said six months.

"Dated Milwaukee, November 20, 1890.

"Witness:                          THOMAS GALLIGAN,
"WM. J. DONAHUE.                    J. C. RICKETSON."

The plaintiff also introduced in evidence a notice served upon the defendant *Thomas Galligan* on April 19, 1892, which, after reciting the holding of the premises by said defendant under the agreement of November 20, 1890, is as follows:

"Now, I hereby notify you, and all holding under you, to vacate said premises on the expiration of six months from the service of this notice on you, and within said period to remove said building.

"Dated Milwaukee, April 19, A. D. 1892.

"James C. Ricketson."

At the close of the trial the court granted a nonsuit, and this is an appeal from the judgment entered thereon.

For the appellant there were briefs by *Van Dyke & Van Dyke,* and oral argument by *G. D. Van Dyke* and *J. T. Fish.* They argued, among other things, that the facts that the Illinois Steel Co. professed to be a consolidated corporation under an Illinois statute authorizing consolidation, and is described as a corporation in its articles of consolidation, and acted as a corporation in employing the defendant and in deeding its property to the plaintiff, are evidence of its existence as a *de facto* corporation, and such proof, in the absence of any conflicting evidence, was sufficient to avoid a nonsuit in an action where the corporate existence of the company was only collaterally in question. *Barrett v. Mead,* 10 Allen, 337–339; *Provident Inst. v. Burnham,* 128 Mass. 458; Newell, Ejectment, 322, §§ 61, 62; 2 Beach, Priv. Corp. §§ 871, 874, 875; *Whitney v. Robinson,* 53 Wis. 309, 316; Taylor, Corp. §§ 145–153. Mere intruders or trespassers, as are the defendants in this action, are not entitled to collaterally attack corporate franchises. *Cincinnati, L. F. & C. R. Co. v. D. & V. R. Co.* 75 Ill. 113; *Remington P. Co. v. O'Dougherty,* 65 N. Y. 570; *Searsbury T. Co. v. Cutler,* 6 Vt. 315; *Smith v. State,* 28 Ind. 322; *State v. Thompson,* 23 Kan. 338. The right of a corpora-

Ricketson vs. Galligan and wife.

tion to take and hold property cannot be inquired into collaterally. *McFarlan v. Triton Ins. Co.* 4 Denio, 392; *Eaton v. Aspinwall,* 19 N. Y. 119; Morawetz, Priv. Corp. (2d ed.),. § 754.

For the respondents there was a brief by *Howard & Mallory* and *John Toohey,* and oral argument by *Samuel Howard* and *Mr. Toohey.* They contended, *inter alia,* that a. corporation must have a full and complete organization and existence as an entity and in accordance with the laws to which it owes its origin before it can assume its franchises or enter into any kind of a contract or transact any business. *Gent v. M. & M. Mut. Ins. Co.* 107 Ill. 652; *Buffington v. Bardon,* 80 Wis. 635; 4 Am. & Eng. Ency. of Law,. 197. A deed to a corporation never created or organized can have no effect. 1 Devlin, Deeds, § 123; *Harriman v.. Southam,* 16 Ind. 190; *Jones v. Cincinnati T. Foundry Co.* 14 Ind. 89; *Russell v. Topping,* 5 McLean, 202. Where there is reasonable doubt of either of the parties being *in esse* at the time the deed is delivered, his existence must be shown as an affirmative fact to render the conveyance valid.. 1 Devlin, Deeds, § 123, note; *Hulick v. Scovil,* 9 Ill. 191.

CASSODAY, J. It appears to be undisputed that in 1865 the Milwaukee & Chicago Railroad Company was in possession of the premises in question; that Frank Mangan, then in the employ of that company, asked the road master of that company to give him permission to build a house and make a garden thereon; that such permission was thereupon granted to Mangan; that Mangan thereupon constructed a. house thereon, and moved into it with his family, and cultivated a garden; that after continuing to occupy the house for about three years he sold the house to the defendant;. that he then moved out and took a part of the fence away. In his deposition taken under sec. 4096, R. S., the defendant. concedes that he only bought the house from Mangan; that.

he got a paper from Mangan,— merely a conveyance of the house; that he got Mangan's title,— his permit to build the house. This evidence indicates pretty clearly that the defendant's entry was under Mangan, and the same as his had been; that is to say, under and in subordination to the Milwaukee & Chicago Railroad Company.

Where a person enters upon the lands of another under an agreement with him, the nature of the agreement necessarily determines the character of the entry. But where he enters without any such agreement, the question whether such entry is an ouster of the legal possession arising from the title depends upon the intention with which such entry is made. "If made under claim and color of right it is an ouster; otherwise it is a mere trespass. In legal language, the intention guides the entry and fixes its character." *Probst v. Trustees*, 129 U. S. 191; *Hacker v. Horlemus*, 74 Wis. 25. Whether such entry is an ouster, or merely in subordination to the plaintiff's title, is therefore usually a question of fact for the jury. *Ibid.*

It seems to be conceded that the evidence is sufficient to sustain a verdict to the effect that the North Chicago Rolling Mill Company became the owner of the whole or at least a fractional part of the premises in question in 1885; but it is contended that the subsequent conveyance from that company to the Illinois Steel Company must be regarded as a nullity, for the reason that the evidence fails to show that the last-named company was ever in fact duly incorporated. However that may be, the evidence seems to be sufficient to support the contention that the Illinois Steel Company, upon receiving such conveyance, took possession of the property therein described, and claimed the premises in question. This court has held that "one who executes a deed to a body claiming to be a corporation is estopped from denying its corporate character to defeat the instrument." *Whitney v. Robinson*, 53 Wis. 309. This principle would

seem to estop the North Chicago Rolling Mill Company from asserting title. "Where there has been a body corporate *de facto* for a considerable period of time, claiming at least to be such, and holding and enjoying property as a corporation, it will be presumed that every mere formal requisite to the due creation of the corporation has been complied with." *Whitney v. Robinson*, 53 Wis. 316, and cases there cited. Assuming that the Illinois Steel Company was a mere *de facto* corporation, yet, under the evidence in this case, we think it may be regarded as having acquired through the foreclosure mentioned, and the conveyance from the North Chicago Rolling Mill Company, the same contractual right to the premises in question that the Milwaukee & Chicago Railroad Company had at the time it gave Mangan the privilege of building the house thereon which he sold to the defendant, and as having transferred such right to the plaintiff by the deed of August 1, 1890. Especially is this so, in view of the agreement entered into between the plaintiff and the defendant, November 20, 1890, set forth in the foregoing statement, wherein the defendant expressly agreed, in effect, to hold the said house and premises then occupied by him *under the plaintiff* as "the *owner* thereof," and "*as his tenant*," and to vacate the same at any time on six months' notice, and upon such notice being given *to have the right to remove said building within six months*. That agreement secured mutual benefits, and was signed by the plaintiff as well as the defendant; hence was mutually binding upon both parties. It certainly estopped the defendant from claiming that the plaintiff had no authority to make such contract or was not the owner of the land. *Skinner v. Richardson, Boynton & Co.* 76 Wis. 464; *Tondro v. Cushman*, 5 Wis. 279. In fact the case of *Jackson v. Bryan*, 1 Johns. 322, goes to the extent of holding, in effect, that the defendant would have been estopped even had the agreement of November 20, 1890, not been made. Under

any view, we think the evidence was sufficient to take the case to the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.