SLOCUM, Appellant, vs. HEAD and others, Respondents.

*December 20, 1899 — February 2, 1900.*

*Corporations: Incorporation: Failure to comply with statutory require-
ments: Partnership: Liability of organizers: Estoppel: Evidence.*

1. Under sec. 4, ch. 113, Laws of 1874 (providing that articles of incor-
poration shall be signed by the persons forming the corporation,
and "a copy thereof, verified under oath" by two or more of the
persons signing the same as being a true copy of the original arti-
cles of corporation, shall be recorded in the office of the register of
deeds), the recording of the original articles of incorporation, in
lieu of such verified copy, is not such a compliance with the statute
as will enable the incorporators to avoid liability to creditors of
the corporation as copartners, unless such creditors dealt with them
as a corporation, in which case they would be estopped to claim
against them as copartners.

2. In the absence of bad faith, when signers of articles of organization
organize, hold meetings, elect officers, etc., as a corporation, and the
corporate existence is not challenged by the state, the steps taken
are sufficient to create them a *de facto* corporation, and give them
rights as such as to all persons with whom their dealing was mu-
tually understood to be in that capacity.

3. Where organizers of an alleged corporation have failed to comply
with one of the express conditions of incorporation, evidence of
representations by the person in charge, who conducted the busi-
ness with plaintiff, that the dealing was not with a corporation,
but with a copartnership, is admissible.

APPEAL from a judgment of the circuit court for Keno-
sha county: R. G. SIEBECKER, Judge. *Reversed.*

The plaintiff, having had on deposit with the banking
house of Dan Head & Co. at Kenosha, a sum of money, sues
the defendants, alleging them to be copartners comprising
the firm of Dan Head & Co. The defendants contend that
Dan Head & Co. was a corporation, in which they were
stockholders simply. About August 12, 1874, eight per-
sons, including some of the defendants, executed articles of
incorporation, under ch. 113, Laws of 1874, to have the
name of Dan Head & Co. with place of business at Kenosha,

for the purpose of loaning money upon securities or otherwise, discounting of commercial paper, receiving deposits, dealing in exchange, and transacting a general banking business, with usual provisions for the management of a corporation. Those articles were signed, but not acknowledged, and the original filed for record in the office of the register of deeds August 12, 1875. On September 5, 1876, that original paper was acknowledged by all of the signers, and the certificate of acknowledgment before a notary public was filed therewith for record on September 6, 1876. It appeared by the testimony of one of the defendants that the business of Dan Head & Co., bankers, had been carried on by that corporation ever since; that it had held its annual meetings, elected its officers, and otherwise acted as a corporation; and that the interest of the various parties therein was represented by stock which had been sold and transferred in accordance with the articles and by-laws of the corporation. It was testified that at a time when plaintiff loaned the money to Dan Head & Co. the cashier, Lewis, who transacted the business, informed her that all the stockholders were partners, and all responsible for the money. The court rejected offers to prove a declaration of partnership by the vice president, not a defendant; also, testimony of plaintiff that she understood Dan Head & Co. were a partnership, and that she was dealing with them as such; and also periodical affidavits of the cashier, filed with the secretary of state, declaring Dan Head & Co. to be a copartnership,— all of which rulings were excepted to. The court directed a verdict for defendants, upon which, after motion to set the same aside and grant a new trial, judgment was entered, from which the plaintiff appeals.

For the appellant there was a brief signed by *Ingalls & Ingalls*, and oral argument by *Wallace Ingalls*.

For the respondents there was a brief by *Quarles, Spence & Quarles*, and oral argument by *George Lines*.

Dodge, J.   Two questions are presented by this appeal:
First.  Have the individuals who were doing business under
the name of Dan Head & Co. taken steps necessary to con-
stitute themselves a corporation *de jure?*   Secondly.  If not,
had they taken such steps towards incorporation in good
faith as constituted them a corporation *de facto*, and was
the dealing between them and the plaintiff upon the under-
standing that they were incorporated?

1.  The statute under which it was attempted to organize
was ch. 113, Laws of 1874, which authorized five or more
persons to incorporate, and required (sec. 4): "The articles
shall be signed by the persons forming such corporation
and a copy thereof, verified under oath by two of the per-
sons signing the same as being a true copy of the original
articles of corporation, shall be recorded in the office of the
register of deeds," etc.   The organizers of Dan Head & Co.
adopted and signed articles, all in perfect compliance with
this statute, but, instead of a verified copy, they recorded
the original articles.   Two years later they all acknowl-
edged the execution, and the notary's certificate was at
once recorded.

The general rule governing the organization of corpora-
tions is that the procedure prescribed by statute must be
substantially and strictly complied with.   The rights of ex-
emption from personal liability thereby resulting are en-
tirely statutory, and can be acquired only upon the terms
specified by the statute.   *Bergeron v. Hobbs*, 96 Wis. 641.
The parties before us failed to comply with the requirement
that they should record a copy of their articles, verified by
two of the signers as being a true copy.   Instead they re-
corded the original.   Whether the record of the original
might have accomplished the same purposes of publicity as
would such verified copy is a question upon which opinions
may differ.   It may well be thought that the record of a
paper bearing no evidence of authentication by any official

lacks elements of ostensible authenticity which were deemed by the legislature necessary, and which would be supplied by the presence of an affidavit, verified before a competent officer, that the paper so recorded was a copy of an existing original, impliedly thereby authenticating, by oath, the existence of such original. If two opinions may be held as to the superior advantage of one method over another, the question was one for resolution by the legislature and not by the courts. They having prescribed the copy, with the incidental authentication resulting from the affidavit thereto, it is not for the courts to declare something else sufficient, although it may seem to them equally efficient. The statute was plain, and the defendants, to secure its benefits, should have complied exactly with this requirement. We are persuaded that their failure so to do prevented them from becoming a corporation, and left them, so far as they did any business in association, copartners, and liable as such, subject to the exception to be hereafter discussed. *Bergeron v. Hobbs, supra.*

2. Inasmuch as no imputation is thrown upon the good faith of the signers of the above-mentioned articles of association, and inasmuch as they organized, held meetings, elected officers, etc., as a corporation, we have little doubt that the steps taken were sufficient to create them a *de facto* corporation, and to give them the rights of a corporation as to all persons with whom their dealing was mutually understood to be in that capacity. *Spahr v. Farmers' Bank,* 94 Pa. St. 429; *Planters' & M. Bank v. Padgett,* 69 Ga. 159; *Gartside C. Co. v. Maxwell,* 22 Fed. Rep. 197. It is not necessary in this case to go further into the principles which govern, or the acts which may constitute, corporations *de facto.* The subject has recently been discussed, and the authorities fully collated, in *Gilkey v. How, ante,* p. 41.

An examination of all the authorities, however, limits the immunity which may be claimed by those who have in good

faith attempted to organize and do business as corporations
to transactions in such capacity. The reasons of the prin-
ciple are well stated by Judge BREWER in *Gartside C. Co.
v. Maxwell, supra,* substantially as follows: "If the corpo-
ration had been challenged by the state, its exercise of cor-
porate powers would have been enjoined; but where persons
act in good faith, and suppose they are members of a valid
corporation, and transact business as such, and the corporate
existence is not challenged by the state, they cannot be held
liable as individuals. If one deals with a supposed corpora-
tion, with what all persons suppose is a corporation, he can-
not afterwards turn around and say, 'Well, I dealt with
this supposed corporation, I thought it was a corporation, I
trusted it as a corporation, but, by reason of failure to legally
incorporate, there is no legal corporation, and therefore I
will hold the stockholders personally liable.'" Their im-
munity is founded upon good faith, and upon the estoppel
of those who deal on the basis of one situation to assert an-
other for the purpose of enforcing demands to which they
did not believe themselves entitled. This limitation has
been maintained by those courts which recognize and enforce
to its fullest extent the corporate privileges of *de facto* cor-
porations.

In *Guckert v. Hacke,* 159 Pa. St. 303, plaintiffs performed
building work under a contract for the "Hughes & Gaw-
throp Co." The individuals composing that alleged com-
pany had made a certificate of incorporation, presented it to
the governor, and obtained a charter or patent, but had
neglected to record the certificate in a specified public office.
The court, after holding this omitted step essential to their
existence as a corporation *de jure,* said: "Failure to record
was failure to comply with one of the express conditions of
incorporation, and consequently of exemption from liability.
It may be conceded that, had plaintiff dealt with defend-
ants as a corporation, he would have been estopped from

claiming against them in any other capacity, even though they failed to record their charter. But it is not pretended that he had any knowledge of the existence of the charter, and there was certainly nothing, either in the name under which they did business or in their conduct, which should have put him upon inquiry. In these circumstances, he was amply justified in dealing with them as partners. It was through their default, not his, that they were so treated, and it would be manifest injustice that he should lose his admittedly honest claim." This doctrine was reaffirmed in *New York Nat. E. Bank v. Crowell,* 177 Pa. St. 313, 320.

In the case before us, the plaintiff offered to prove that the man who was in charge of the business of this concern (conducted, by the way, under a name which indicated a partnership rather than a corporation), and through whose hands the treasury of the corporation had received her money, represented that the dealing was not as a corporation, but as a partnership. She also offered to prove that she had no knowledge of any incorporation, and dealt with Dan Head & Co. as a copartnership. These offers were rejected. We are persuaded that the rule indicated by the authorities above cited is the true one,— that, in order that immunity shall result from ostensible incorporation, that fact must have been apparent to the parties in the individual dealing. The principle that parties who associate themselves together in business for mutual profit are copartners, unless they comply with the statutory requirements to make them a corporation, still exists, subject only to the limitation above specified. *Bergeron v. Hobbs,* 96 Wis. 643. The question of whether or not the dealing by which the plaintiff's money passed to Dan Head & Co., if it did so pass, was upon the mutual understanding that that concern was a corporation, should have been submitted to the jury; and her testimony, offered and rejected, upon that subject, should have been admitted, as also the verified declarations through

several years of the men in charge of the business, under their election as president and cashier. The direction of a verdict for the defendants, as also the rejection of plaintiff's evidence and of the affidavits filed with the secretary of state, was error, for which the judgment must be reversed.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.