Pietsch and others, Respondents, vs. Krause, imp., Appellant.

*December 19, 1902—January 13, 1903.*

*Corporations: Corporate stock: Fraud: Promoters: Purchase of stock below par: Statutes: Pleading: Joinder of causes of action.*

1. Sec. 1751, Stats. 1898, provides that the capital stock of a corporation, divided into shares, shall be deemed personalty, and, when certificates thereof are issued, such shares may be transferred by indorsement of the owner and delivery of the certificate. Sec. 1753, and sec. 1, ch. 193, Laws of 1899, provides

that "no corporation shall issue any stock or certificate of stock" except in consideration of money, or labor, or property estimated at its true money value, actually received by it, equal to the par value thereof, and that "all stocks . . . issued" contrary to that section shall be void. Sec. 1773 contemplates . that a corporation may transact business with its own members . before it is at liberty to do so with others, and sec. 4436 provides for the punishment of the issuance of a false certificate ·of stock. *Held*, that the words "issue any stock," and "all stocks issued," in sec. 1753, refer to certificates of stock, as dis- ·tinguished from the stock itself. *Clarke v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492, criticised, and *Hinckley v. Pfister*, 83 Wis. 64, 53 N. W. 21, in so far as it may be regarded as holding that a person who has subscribed for stock, but not paid in the full amount required by sec. 1753, can have no protection in equity against promoters who have defrauded the corporation, overruled.

·2. Plaintiffs brought action against the promoters of a corporation to recover, in behalf of the corporation, the amount of the moneys which the promoters severally subscribed and pretended to pay in. The shares of stock in the corporation were ·of the face or par value of $100; and it was alleged in the complaint, among other things, that plaintiffs had only paid for their stock at the rate of $34 per share. *Held*, that, notwithstanding such allegations, the complaint stated a good cause of action in equity in favor of the plaintiffs for the benefit of the corporation.

:3. In an action by subscribers to corporate stock against the corporation and its promoters, the complaint stated three good causes of action and thereon the plaintiff prayed judgment: First, that the corporation have judgment for moneys subscribed but not actually paid in by the promoters for their stock; second, that plaintiffs recover of the defendants damages sustained by false and fraudulent representations as to the corporation's assets, whereby plaintiffs were induced to purchase stock; and third, that the board of directors and defendants be enjoined from selling plaintiffs' stock to pay assessments thereon and that defendants be enjoined from selling their own stock. *Held*, that the complaint stated a cause of action at law for damages and another in equity to prevent enforcement of liability of plaintiffs which were improperly united.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed*.

This is an appeal from an order overruling a demurrer to the amended complaint brought by the members and subscribers to the capital stock of the defendant corporation for the benefit of the corporation and all its stockholders similarly situated who choose to come in and be made parties, against the defendants, who were promoters of the corporation. The original complaint was held to be insufficient as against the defendant *Krause,* and so the order overruling the demurrer to the complaint was reversed by this court. 112 Wis. 418, 433, 88 N. W. 223. Thereupon the complaint was amended so as to obviate such defect, but otherwise the complaint seems to be substantially the same. It is so fully given in the former report of the case as not to require repetition here. It alleges, in effect, that the company was incorporated and organized in September, 1892, to deal in real estate, with a capital stock of $203,400, divided into 2,034 shares of the par value of $100 each; that the defendants, including the appellant, *Max C. Krause,* were promoters of the corporation; that in July, 1892, through one of their number, they obtained an option on each of two pieces of land in the aggregate containing 193½ acres, for the aggregate sum of $62,584; that subsequently they obtained two deeds of such lands to one of their number, in each of which the consideration price inserted was "$1.00 and other good and valuable consideration;" that at the time of receiving such deeds the person receiving the same gave back mortgages in the aggregate amount of $46,238; that thereupon the defendants, through the person receiving such deeds and giving back such mortgages, conveyed said lands, and the whole thereof, to the corporation for the consideration of $116,100, as therein expressed, and stating therein that such lands were free and clear from all incumbrances except certain mortgages, amounting in the aggregate to $46,238, "which the party of the second part [being the defendant corporation] hereby assumes and agrees to pay," and thereupon the defendants in ·

control of the corporation caused the corporation to issue to
them, respectively, the number of shares of stock mentioned in
the amended complaint, in the aggregate 1,472 shares, upon
which none of the defendants paid anything, but upon each
share of such stock there was credited $34 as having been paid,
making in the aggregate $50,080, without any payment what-
ever being made therefor; that the balance of 562 shares of
stock was designated by the defendants as "treasury stock,"
which was to be sold for cash, and the amount received there-
for was to be used in making the first payment of the purchase
price of the lands, and to return and pay back to the defend-
ants, as such promoters, all the money which had been ad-
vanced by them on the purchase of the lands, and for each
share which the defendants, respectively, sold of the 562
shares, he was to have a commission of $2; that the defendants
severally succeeded in selling 525 shares of such "treasury
stock," making their aggregate commissions $1,050; that of
the 525 shares of stock so sold the plaintiffs herein were at the
time of the commencement of this action the owners and hold-
ers of 370½ shares, and that of such "treasury stock" there
are still thirty-seven shares unsold. The complaint is
interspersed with numerous allegations to the effect that the
defendants, as such promoters, entered into a scheme to syn-
dicate said lands; that the contracts therefor were so entered
into for the purpose of concealing and covering up the fraud
of the purchasing the lands for the sole benefit of the corpora-
tion, in order that the defendants might reserve to themselves
a large secret profit; that in furtherance of such scheme, se-
cret agreements were made among themselves, as stated; that
the defendants, to deceive others, pretended to make *bona
fide* subscriptions for stock, but with no intention of ever
paying therefor, and they never did; that the plaintiffs were
kept wholly ignorant of such scheme, and were misled by
such false subscriptions; that the first board of directors was
composed almost entirely of such promoters and participants

in such fraudulent scheme to mislead, cover up, and conceal the true facts as to such purchase price; that the defendants made false and fraudulent representations with intent to deceive as to the original price of said lands, which the plaintiffs believed and relied upon in subscribing for such stock, and that the defendants had wrongfully and fraudulently diverted the funds and property of the corporation; that the plaintiffs had refused to pay the assessment of February 27, 1899, by reason of having discovered the frauds mentioned. The complaint closed by demanding judgment (1) in behalf of the corporation against the defendants for $55,000, with interest from October 7, 1893; (2) that the plaintiffs have and recover of the defendants any damages and losses sustained by them by reason of the fraud and deception aforesaid, to be fixed and determined by the court; (3) that the defendants be restrained and enjoined from advertising or disposing of any stock held by them, or either of them, in the corporation, or any stock owned by them, or either of them, but held by others secretly for the benefit of said defendants, or either of them; (4) that such board of directors and the defendants be restrained and enjoined from selling, advertising, or offering for sale the stock of the plaintiffs, or any part thereof, or any interests of the plaintiffs in said corporation, to pay said assessment, as hereinbefore set forth, until the further order of the court; and for general relief.

The cause was submitted for the appellant on the brief of *Quarles, Spence & Quarles,* and for the respondents on that of *Geo. L. Williams.*

Cassoday, C. J. The first ground of demurrer is that the amended complaint fails to state a cause of action in equity in favor of the plaintiffs for the benefit of the corporation. This is put upon the ground "that none of the plaintiffs are holders of any valid stock in the corporation"; that "every certificate of stock held by every plaintiff is, under our stat-

ute, absolutely void." The reason for this claim is that the respective plaintiffs only paid for their stock at the rate of $34 per share. In support of such contention counsel rely upon the statute, which declares:

"No corporation shall *issue* any stock or certificate of stock except in consideration of money, or labor or property estimated at its true money value, actually received by it, equal to the par value thereof, . . . and all stocks . . . issued contrary to the provisions of this section . . . shall be void." Sec. 1753, Stats. 1898, and sec. 1, ch. 193, Laws of 1899.

Whether such claim of counsel can be maintained depends upon what is meant by the words "no corporation shall *issue* any stock or certificate of stock," and that "all stock issued contrary" to that section "shall be void." There can be no mistake as to the meaning of the words "certificate of stock." Another section of the statute provides:

"The capital stock of every corporation, divided into shares, shall be deemed personal property, and when certificates thereof are issued, such shares may be transferred by indorsement of the owner . . . and delivery of the certificate." Sec. 1751.

The section then provides for the delivery and transfer of such stock certificate. See *Morey v. Fish Bros. W. Co.* 108 Wis. 527, 528, 84 N. W. 862. Another section of the statute provides for the punishment of the issuance of a false certificate of stock. Sec. 4436. As recently stated by Mr. Justice DODGE, the object of sec. 1753 is to protect those dealing with corporations, "rather than those dealing in stock certificates." *First Avenue L. Co. v. Parker,* 111 Wis. 7, 86 N. W. 606. It is stated by a standard author:

"A certificate of stock is, from one point of view, a mere muniment of title, like a title deed. It is not the stock itself, but evidence of the ownership of the stock; that is to say, it is a written acknowledgment by the corporation of the interest of the shareholder in the corporate property and fran-

chises. It operates to transfer nothing from the corporation to the shareholder, but merely affords to the latter evidence of his rights. It should be clearly apprehended that the certificate is not the stock, but merely written evidence of the ownership of shares. . . . The certificate, therefore, has value in itself only as evidence, and, apart from the shares which it represents, it is utterly worthless." 1 Cook, Stock & Stockh. & Corp. Law, § 14.

The question recurs whether the words of sec. 1753 prohibiting the *"issue"* of "any stock," and declaring "all stocks . . . issued contrary" to that section to "be void," mean anything different than a mere certificate of stock. In the section of Cook cited it is said that "it is not essential to the existence of the corporation that certificates of stock shall be issued," and he speaks of the issue of stock as the issue of a certificate of stock.

"The capital stock of a corporation is the money or property put into the corporate funds by the subscribers for their stock, which fund becomes the property of the corporation. A share of said capital stock is the right to partake, according to the amount put into the fund, of the surplus profits, and, upon dissolution of the corporation, of the fund remaining after payment of debts." *Burrall v. Bushwick R. Co.* 75 N. Y. 211.

"The interest of a stockholder in the corporate property represented by his stock is nothing more than a *pro rata* share in the property of the company remaining after the payment of debts and expenses, with the intermediate right to share in the profits." *Van Brocklen v. Smeallie,* 140 N. Y. 78, 35 N. E. 415; *People ex rel. Wiebusch & H. Co. v. Roberts,* 154 N. Y. 101, 47 N. E. 980; *Flynn v. Brooklyn C. R. Co.* 158 N. Y. 504, 53 N. E. 520.

It is said in a Massachusetts case:

"The certificate, though convenient as evidence of title, does not itself constitute the title. The certificate is not the stock. . . . A share in a corporation is a right to participate in the profits, or in a final distribution of the corporate property, *pro rata.*" *Field v. Pierce,* 102 Mass. 261.

Our statute cited declares that the "capital stock," when "divided into shares, shall be deemed personal property," and then prescribes the functions of certificates.    Sec. 1751. Another section of the statutes contemplates that a corporation may transact business with its own members before it is at liberty to transact business with others.    Sec. 1773. We must hold that the words "issue any stock" and "all stock  .  .  . issued," in sec. 1753, mean the same, in effect, as the words "certificate of stock."

The distinction between stock in a corporation and a certificate or evidence of a right to such stock was not observed in *Clarke v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492, nor *Hinckley v. Pfister,* 83 Wis. 64, 53 N. W. 21.    In the first of these cases the action was to recover back money paid upon a contract void as against public policy.    The other case related to bonds actually issued contrary to the statute, and void, and it was held that the plaintiff had no standing in equity upon several grounds.    In so far as that case may be regarded as holding that persons who have subscribed for stock in a corporation and paid in their money, although not the full amount required by sec. 1753 of the statutes, can have no protection in a court of equity against promoters who have defrauded the corporation, it must be regarded as overruled.    Under the repeated rulings of this court, we must hold that the complaint states a good cause of action, in equity, in favor of the plaintiffs for the benefit of the corporation.    *Pittsburg M. Co. v. Spooner,* 74 Wis. 307, 42 N. W. 259; *Fountain Spring P. Co. v. Roberts,* 92 Wis. 345, 66 N. W. 399; *Forest L. Co. v. Bjorkquist,* 110 Wis. 551, 86 N. W. 183, and cases there cited.    The complaint prays judgment in behalf of the corporation for the amount of the moneys which the defendants severally subscribed and pretended to pay in, but never in fact did pay in.

2. Another ground of demurrer is that two or more causes of action are improperly united.    It becomes important,

therefore, to determine whether there is another good cause of action alleged in the complaint which ought not to be joined with the one mentioned for the benefit of the corporation. The complaint also prays judgment "that the plaintiffs have and recover of the defendants any damages and losses sustained by them by reason of the fraud and deception aforesaid, to be fixed and determined by the court." There are numerous allegations in the complaint to the effect that the plaintiffs were deceived and defrauded by false representations knowingly made by the defendants as to the purchase price of the lands, and upon which the plaintiffs relied, and were thereby induced to subscribe for stock in the corporation, and pay therefor $34 per share. This cause of action is one at law for damages and losses sustained by the plaintiffs. The complaint also prays judgment "that said board of directors and the defendants be restrained and enjoined from selling, advertising, or offering for sale the stock of the plaintiffs, or any part thereof, or any interests of the plaintiffs in said corporation, to pay said assessment levied as hereinbefore set forth, until the further order of the court." This is a cause of action in equity to prevent the board of directors and the defendants from enforcing the collection of an assessment of the stock of the plaintiffs, and to enjoin the board and defendants from making such collection by the sale of the stock of the plaintiffs. The complaint also prays judgment that the defendants be restrained from selling their own stock, or any part thereof. This may, perhaps, be regarded as ancillary to the first cause of action. Whether it is or not is unnecessary to here determine. There are at least three good causes of action improperly united.

*By the Court.*—The order of the superior court of Milwaukee county is reversed, and the cause is remanded, with direction to sustain the demurrer, and for further proceedings according to law.