CITIZENS BANK OF CLINTON, Respondent, vs. JONES and wife, Appellants.

*March 23—April 17, 1903.*

*Mortgages: Execution: Husband and wife: Banks and banking: Mortgage given after termination of mortgagee's corporate existence: Validity: Estoppel.*

1. In an action against husband and wife to foreclose a mortgage, although their own testimony tended to show that she was induced by his fraudulent representations to sign the instrument in blank and that afterwards, without her knowledge or consent and in her absence, it was filled up, signed by witnesses,

and its acknowledgment certified by a notary, the testimony of the subscribing witnesses, one of whom was the notary, is *held* to sustain a finding that the mortgage was duly executed and acknowledged by both husband and wife and that there was no fraud.

2. By the execution and delivery of a mortgage to a mortgagee known and acting as a banking corporation, the mortgagors are estopped to deny the corporate existence of such mortgagee at the time of such execution.

3. The fact that, prior to the giving of a mortgage, the term of existence of the mortgagee as a banking corporation had expired by limitation and the three years allowed by sec. 1764, Stats. 1898, for closing up its business had also expired, did not render the mortgage void so as to prevent its foreclosure by a duly organized bank to which the assets of the mortgagee were transferred—there being no statute declaring such contracts void or imposing a penalty upon a corporation so doing business after expiration of its term.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

This is an action to foreclose a mortgage alleged to have been executed by the defendants *William* and *Rosa B. Jones* February 17, 1896, to secure a note executed by *William Jones* of the same date. *Mrs. Jones* separately answered to the effect that she was the wife of *William Jones;* that they were living upon the mortgaged premises as their homestead; that she had no interest therein except the inchoate right of dower and homestead; and she denies that she ever acknowledged the execution of the mortgage, or signed the same in the presence of witnesses, or delivered the same as a mortgage or at all, or that she ever had any knowledge of the execution thereof until the commencement of this action. She alleges that about the time of the date of the mortgage she signed a blank form of mortgage at the request of her husband, and relying upon his false and fraudulent representations; that the payee of the note and mortgage, known as the "Citizens Bank of Clinton," had no existence at the time of any kind or for any purpose whatever; that its charter ex-

pired in 1887, but that it continued to do business in the same name without any charter down to April 1, 1898, when it was reincorporated. The separate answer of the defendant *William Jones* raises substantially the same questions.

At the close of the trial the court found as matters of fact, in effect, that July 15, 1882, four persons therein named and ten others organized the Citizens Bank of Clinton with a capital stock of $25,000, being 250 shares of $100 each, and obtained a certificate of such incorporation pursuant to subsec. 19, sec. 2024, ch. 94, of the Revised Statutes of this state; that it was specified therein that such association would commence July 15, 1882, and terminate July 15, 1887; that such certificate was duly filed for record and duly recorded in the register's office July 18, 1882; that said association at once began a banking business at Clinton, and continued the same to April 1, 1898; that all the assets and stock of the association, including the note and mortgage in question, were owned by Archibald Woodard, A. Woodard, Jr., George L. Woodard, K. B. Duxstad, and O. R. Tillerson's estate and Christee Tillerson, administratrix, April 1, 1898; that on that day they organized the plaintiff corporation, and obtained a certificate of incorporation for the purpose of doing business as a bank under the statutes of this state, with a capital stock of $25,000, being 250 shares of $100 each, specifying the name, residence, and share of each stockholder, and specified therein that such corporation should commence April 1, 1898, and terminate April 1, 1908; that the certificate was duly filed for record and recorded April 14, 1898, in the register's office; that the assets of the old association belonging to the persons named, including the note and mortgage in question, were in the bank building where the old association had so carried on its business at Clinton, and in the possession and under the control of the persons named; that upon the incorporation of the plaintiff, and with the knowledge and consent of the incor-

porators, the plaintiff took possession of the assets of the old association, including the note and mortgage, and took up and continued the banking business at the same place and under the same name, and used the same books, seal, sign, and offices as the old association, without taking any written transfer from the old association, and the plaintiff has continued such business ever since, and brings this action as plaintiff; that the note and mortgage passed into the possession and ownership of the plaintiff April 1, 1898, and now belongs to the plaintiff, and did at the time of the commencement of this action; that the appellant *William Jones* was and is an attorney at law, and was a stockholder and cashier of the old association and the aggregation known as the Citizens Bank of Clinton from 1886 to December 1, 1896, and during that time had the main charge and management of the business affairs of the association; that December 31, 1891, he purchased the mortgaged premises in question for $2,633.70, of which sum he borrowed from the association $1,961.78; that in 1892 he was married to the defendant *Rosa B.;* that June 30, 1894, his indebtedness to the association reached the sum of $4,409.37; that he then gave a note to the association for $3,100, payable in one year, no part of which has ever been paid, except by renewal notes; that he and his wife continued to reside upon the premises as their homestead; that February 17, 1896, *William Jones* executed the note in suit for $2,500, and indorsed the same on the back as "Citizens Bank of Clinton, Wisconsin, by *William Jones,* Cashier;" that at the same time he and his wife, *Rosa B. Jones,* "executed the mortgage described in said complaint; that said mortgage, after its execution" by them, "was duly acknowledged by them, and such acknowledgment duly certified to, and their signatures thereto duly witnessed, so as to entitle said mortgage to record, and the same was recorded as set forth in said complaint," and was duly delivered; that there is no warrant for "finding that the said *Rosa*

*B. Jones* was fraudulently induced to execute said mortgage, or that she did not know that she was executing a mortgage on said homestead;" that the mortgaged premises are insufficient security; that *William Jones* is insolvent; that A. Woodard is personally responsible for any deficiency by reason of his guaranties of the payment of the note and mortgage; that there is due the plaintiff on the note and mortgage $2,500, with interest from February 17, 1896, at six per cent. per annum.

As conclusions of law the court found, in effect, that the evidence is insufficient to sustain any of the defenses pleaded in the answer of either defendant; that the Citizens Bank of Clinton, organized July 15, 1882, was, as to the appellants, a *de facto* corporation from and after July 15, 1887; that they are estopped from questioning the *de facto* existence of the association; that the plaintiff is entitled to judgment for the foreclosure of the mortgage and the sale of the premises described for the payment of the amount due and unpaid on the note and mortgage; and ordered judgment accordingly. From the judgment so entered the defendants *William* and *Rosa B. Jones* appeal.

For the appellants there was a brief by *Smith & Pierce* and *John Cunningham,* and oral argument by *William Smith* and *Mr. Cunningham.*

*John M. Whitehead* and *A. E. Matheson,* for the respondent.

CASSODAY, C. J.    It is contended that the mortgage is void as to the homestead on the ground that it was never executed or acknowledged by *Mrs. Jones.* The claim is that at the request of her husband she was induced to sign a blank form of mortgage on his representation that it was to be used for the accommodation of the bank and did not concern her in any way; and that subsequently, and without her knowledge or consent and in her absence, it was filled up and signed by the

two witnesses and certified by the notary public. The testimony of *Mr.* and *Mrs. Jones* tends to support such claim. Mr. Herron, one of the witnesses to the mortgage, testified to the effect that he was a bookkeeper in the bank February 17, 1896; that he knew *Mr.* and *Mrs. Jones;* that he recognized his signature as one of the witnesses to the mortgage; that he signed as such witness in the presence of *Mrs. Jones,* and at the same time that the other witness, H. A. Moehlenpah, signed. Mr. Moehlenpah, who signed as a witness, was also the notary public who took the acknowledgment, and he testified to the effect that the mortgage handed to him was in the handwriting of *Mr. Jones;* that it was executed by *Mr.* and *Mrs. Jones;* that they were both personally known to him; that they acknowledged the same before him; that the mortgage belonged to the bank; that his recollection was that he signed the mortgage as a witness at the bank; that he wrote it in the presence of *Mrs. Jones,* and that at the same time he took the acknowledgment of the mortgage; that he was in the bank, attending to business, on the date of the mortgage, February 17, 1896, all day, he was sure. The certificate of acknowledgment is in the usual form. If it is true, *Mr.* and *Mrs. Jones* both appeared before the notary, to whom they were known to be the same persons described in and who executed the mortgage, and acknowledged that they executed the same. The official duty of the notary required him to make a truthful certificate. He was acting under the sanction of an oath, and was liable in damages for misconduct or neglect of duty. Secs. 174, 180, Stats. 1898. The evidence is ample to support the finding that *Mr.* and *Mrs. Jones* both executed the mortgage and, after its execution by them, duly acknowledged the same. Especially is this so in view of the well-established rule that, to set aside a deed or mortgage duly witnessed and acknowledged, the evidence must be clear, satisfactory, and convincing beyond a reasonable controversy. *Larson v. Pederson,* 115 Wis. 191, 91 N. W. 660; *Linde v.*

*Gudden,* 109 Wis. 326–328, 85 N. W. 323, and cases there cited.

2. It is claimed that the mortgage is void because taken in a business prohibited by law. The certificate of incorporation, issued in 1882, in pursuance of the statute, stated that the association would terminate July 15, 1887. Subsec. 19, sec. 2024, Stats. 1898. The statute also declared that "no person or association shall commence or carry on the business aforesaid until such person or association shall have complied with the provisions of this act." Subsec. 21, Id. It will be observed that none of the provisions of the statute declare such contract void, nor impose a penalty for doing such business. Another provision of the statute declares that:

"All corporations whose term of existence shall expire by their own limitation . . . shall nevertheless continue to be bodies corporate for three years thereafter for the purpose of prosecuting and defending actions and of enabling them to settle and close up their business, dispose of and convey their property and divide their capital stock, *and for no other purpose.*" Sec. 1764, Stats. 1898.

In support of the construction and the effect which it is claimed should be given to these statutes, counsel cite certain decisions of this court. In the earliest case cited it was held, in effect, that a foreign insurance company, which had attempted to do business in this state in violation of the statute, which imposed a penalty for noncompliance, could not maintain an action upon a contract made with the company; and this was put on the ground that "a statute which imposes a penalty for doing an act, except as prescribed, amounts to a prohibition to do the act otherwise, and a contract for its performance is void." *Ætna Ins. Co. v. Harvey,* 11 Wis. 394. See *Washburn Mill Co. v. Bartlett,* 3 N. D. 138, 54 N. W. 544, 545. The other cases in this court cited by counsel involve the effect of a prohibition in the statute coupled with a penalty. *Brower v. Haight,* 18 Wis. 102; *Melchoir v. Mc-*

*Carty,* 31 Wis. 252; *Clark v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492. Such rulings are in harmony with more recent decisions of this court. *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964; *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 76–78, 89 N. W. 904; *Pietsch v. Krause,* 116 Wis. 344, 93 N. W. 9. In the case at bar the action is not brought by the association of which the charter expired in 1887, but by the association which was incorporated in 1898. Had it been brought by the former, there would have been authority for holding that the action could not be maintained, for the reason that the corporation had expired by limitation, and was dead. 1 Thompson, Com. Law Corp. §§ 530–533. But there are adjudications holding that the question whether the charter had expired by limitation could not be adjudicated collaterally, but only in a direct proceeding by the state. Id. See, also, *Searcy v. Yarnell,* 47 Ark. 269, 1 S. W. 319; *Oregonian R. Co. v. Oregon R. & N. Co.* 23 Fed. 232. This court held several years ago that "one who executes a deed to a body claiming to be a corporation is estopped from denying its corporate character to defeat the instrument." *Whitney v. Robinson,* 53 Wis. 309, 315, 316, 10 N. W. 512, and cases there cited. See, also, *Skinner v. Richardson, B. & Co.* 79 Wis. 464, 468, 45 N. W. 318; *Ricketson v. Galligan,* 89 Wis. 394, 399, 62 N. W. 87; *Slocum v. Head,* 105 Wis. 431, 81 N. W. 673; *Franke v. Mann,* 106 Wis. 118, 81 N. W. 1014; *Gilman v. Druse,* 111 Wis. 400, 87 N. W. 557. The text-writer above cited also declares that:

"A party who enters into a written contract with a body purporting to be a corporation, in which it is described by its corporate name, solemnly admits the existence of the corporation for the purposes of a suit brought to enforce the obligation, and in such an action he will not be permitted to plead *nul tiel corporation,* or otherwise to deny the corporate existence of the plaintiff." 1 Thompson, Com. Law Corp. § 518, citing a large number of cases in support of the rule stated, and giving illustrations in the following sections.

The latest edition of the Encyclopedia of Law declares that:

"A person who contracts with a corporation, whether it be by a subscription to its stock, or by promissory note, bond, mortgage, or other form of contract, is, in a suit upon such contract, estopped to deny the existence of the corporation; and similarly, where a body of persons hold themselves out as a corporation and contract as such, they will be estopped to deny their corporate character." 7 Am. & Eng. Ency. of Law (2d ed.) 668.

It has been held by the supreme court of the United States that "one who contracts with a corporation as such cannot afterwards avoid the obligations so assumed by him on the ground that the supposed corporation was not one *de jure.*" *Andes v. Ely,* 158 U. S. 312. See, also, *Dooley v. Cheshire G. Co.* 15 Gray, 494; *Beal v. Bass,* 86 Me. 325, 29 Atl. 1088; *Scheufler v. Grand Lodge, A. O. U. W.* 45 Minn. 256, 47 N. W. 799; *Snider's Sons' Co. v. Troy,* 91 Ala. 224, 8 South. 658, 24 Am. St. Rep. 887; *Bank of Shasta v. Boyd,* 99 Cal. 604, 34 Pac. 337. In this last case it was held that:

"A mortgagor of property, who has dealt with the mortgagee as a corporation, and received from it the consideration of the mortgage note, is estopped from denying its corporate capacity in an action by the corporation to foreclose the mortgage."

In a recent case in this state it was held that:

"Where a person deals with an association of individuals as a corporation, such dealing, by estoppel, as to such transaction, fixes the status of the company to be what it was represented and recognized to be therein." *Clausen v. Head,* 110 Wis. 405, 85 N. W. 1028.

Without determining whether the payee of the note and mortgage was, at the time of their execution, a *de facto* corporation within the meaning of the authorities, yet we are constrained to hold that both *Mr.* and *Mrs. Jones,* by the execution and delivery of the mortgage, are estopped from

maintaining that what their counsel call the aggregation known as the "Citizens Bank of Clinton" had no corporate existence at the time the note and mortgage were given, February 17, 1896. Under some of the authorities cited the same is true if we regard the body of persons composing such aggregation, and who, as found by the court, owned the assets of the association at the time, as simply holding themselves out as a corporation, and contracting as such in taking the note and mortgage in question. There can be no doubt but that the assets of the association, including the note and mortgage, passed to and became the property of the new corporation, the plaintiff in this action.

*By the Court.*—The judgment of the circuit court is affirmed.