Maxcy, Respondent, vs. Peavey, Appellant, and Maxcy, imp., Respondent.

*March 17—May 9, 1922.*

*Bills and notes: Conditional delivery: Consideration: Evidence: Corporations: Irregular organization: Promoters: Estoppel: De facto corporations: Trial: Bringing in new parties: Discretion of court.*

1. Promissory notes absolute on their face may, under some circumstances, be shown to have been delivered conditionally under an agreement that they should not take effect until the happening of some specified event.

2. An agreement entered into between two residents of Wisconsin supposed to be familiar with land values and a nonresident who was to furnish the necessary money to pay for a tract of land which provided that the three should form a corporation of which each was to own one third of the stock and that the money advanced by the one should be evidenced by notes signed by the others, each assuming one third of the sums advanced, is construed not to make the notes, which were absolute on their face, conditional; and the notes were based on a consideration although the money was advanced to the corporation and not to the individuals who signed the notes.

3. The promoter of a corporation, elected its president, who was one of the persons primarily at fault for irregularities in the organization, could not set up such irregularities as against another incorporator who took no part in its organization, the corporation being a *de facto* corporation as between such parties.

4. The refusal of the trial court to require the corporation to be made a party in an action on the notes was not an abuse of discretion, and the denial of a motion to have the corporation made a party to the action, where there was no affidavit made in conformity with sec. 2610, Stats., was not error.

Appeal from a judgment of the circuit court for Bayfield county: G. N. Risjord, Circuit Judge. *Affirmed.*

Action on seven promissory notes made by defendant *Peavey.* Defendant admitted the making of the notes, and alleged as a defense that there was no consideration. He further alleged by way of counterclaim that there was due him as commissions the sum of $4,000.

In October, 1911, an agreement was made between *J. S. Maxcy, D. M. Maxcy,* and *H. H. Peavey* which provided that the parties should purchase 13,000 acres of land from the American Immigration Company; that a stock company should be organized, each party to subscribe for one third of the stock; that *J. S. Maxcy* should furnish the money needed to make the necessary payments to the land company during the years 1911 and 1912, taking the notes of *D. M. Maxcy* and *H. H. Peavey* each for one third of the payments, the notes to bear interest at six per cent. and *Maxcy* to hold as security the stock of the other two; that *Peavey* should be president and *D. M. Maxcy* treasurer of the corporation to be organized; that in case the corporation should not receive enough money in 1912 and 1913 to pay its taxes the money should be advanced by *J. S. Maxcy,* he taking notes of the corporation, indorsed one third each by *D. M. Maxcy* and *H. H. Peavey,* with six per cent. annual interest.   It further provided, omitting minor details, that *Peavey* should sell and supervise the sale of the lands; should be allowed to pay commissions to men he might hire; and should charge his necessary expenses to the corporation, but should not be allowed any commissions or compensation for his services until dividends should be paid on the stock.   In January, 1914, the agreement was modified so as to allow *Peavey* to collect commissions on certain sales.

Pursuant to the agreement first set out, a corporation called the Peavey Realty Company was organized, or attempted to be organized, in January, 1912, when a certificate was duly filed, with a capital stock of $30,000, divided into shares of $100 each, which shares were later equally divided among the parties.   Defendant *Peavey* was elected president and *D. M. Maxcy* secretary and treasurer.   A contract dated February 15, 1912, for the purchase of the land above mentioned was entered into, whereby the Peavey Realty Company agreed to pay $50,000 in instalments of $5,000 the first year and $9,000 each year thereafter, with interest, and to pay taxes on the land after 1911.

From time to time thereafter plaintiff *J. S. Maxcy* advanced money to pay taxes and interest and principal on the contract, each of the others giving him their notes for one third.    The notes sued on are those so given by defendant *Peavey* for money advanced and for interest on this money.

The only money involved in the transaction was that paid by plaintiff on the contract with the land company.    No subscription list was signed for the stock and no money was paid directly for the stock.    The one hundred shares of defendant *Peavey* were given to plaintiff as security for the notes above mentioned.    Very little of the land was actually sold for cash, although a part of it was traded for mortgages and chattels.

The answer set out that after the formation of the company defendant deposited with plaintiff his shares of stock and also certain stock of the H. H. Peavey Company, which stock had never been returned; that defendant closed a deal whereby the American Immigration Company received from the Peavey Realty Company a first mortgage on certain lands executed by C. E. Gunhaus & Company, which mortgage paid all the indebtedness of the Peavey Realty Company to the American Immigration Company; that defendant, previous to this transaction, had sold enough of the land purchased to reimburse plaintiff for all the sums he had advanced.    In an amended answer defendant admitted the execution of all the notes and alleged that there was no consideration for their making.    By way of counterclaim defendant alleged that during the years 1912, 1913, 1914, and 1915 he incurred disbursements and expenses incident to the sale of lands to the amount of $4,400, which sum, pursuant to the agreement above mentioned, was to be repaid to defendant; that no part of this sum had been paid with the exception of $400, and that there was now due from plaintiff and *D. M. Maxcy* the sum of $4,000.

*D. M. Maxcy*, impleaded defendant, admitted the giving

of the mortgage by the Gunhaus Company, but alleged that said company had no property other than equities and paid no money on the indebtedness to the American Immigration Company. He alleged that the Gunhaus Company was owned by defendant *Peavey*. As to the sale of land by *Peavey, D. M. Maxcy* alleged that none of the sales was of any advantage to the Peavey Realty Company, and that no money had ever been realized from them, and as a defense to the claim for commissions alleged that no demand had been made on him as treasurer of the corporation within the time limited by statute.

Prior to the trial defendant *Peavey* moved that the Peavey Realty Company be joined as party defendant. The trial court's denial of this motion is cited as error.

Defendant *Peavey* testified that the corporation had not been properly organized and had not complied with the statutory requirements concerning payments for stock, and that he had signed the notes with the understanding that the corporation was primarily liable, and that the agreement was that the notes were to be paid out of the profits to be made in the sale of the lands. Plaintiff *Maxcy* testified that the substance of the agreement was that he should advance all the money and that the others should give him their personal notes each for his own proportional interest in the corporation.

The trial judge found as facts the execution of the agreement to buy the land as above stated and the modification whereby defendant was allowed a commission on sales of certain land above a certain price, and that by the terms of the agreement plaintiff *Maxcy* advanced all the money and took the personal notes of the defendants for two thirds of it, the stock being evenly distributed. He held as conclusions of law that defendant *Peavey* was liable primarily on the notes sued on and that he did not sign them as guarantor of the Peavey Realty Company; that the obligations entered into in making the contract and the interest that each had in

the company and in the purposes for which it was organized were a valuable consideration for the notes; that so far as this action is concerned the Peavey Realty Company is sufficiently organized and defendant *Peavey* is estopped to assert otherwise; and that defendant's counterclaim cannot be maintained against plaintiff, but must be prosecuted, if at all, against the corporation. Judgment was entered for the amount of the notes, with interest.

For the appellant there was a brief by *John J. Fisher* of Bayfield, attorney, and *McGovern, Hannan, Devos & Reiss* of Milwaukee, of counsel, and oral argument by *F. E. McGovern* and *John J. Devos.*

*A. W. MacLeod* of Washburn, for the respondent.

JONES, J. It is undisputed that the defendant executed the notes in question, but it is claimed by defendant that his liability was not absolute and that it was conditional only; and that since the notes never passed out of the hands of the payee, they are subject to all defenses against any claim arising out of a non-negotiable contract.

It is urged, and much authority is cited for the proposition, that notes bearing on their face a binding obligation may be shown to have been delivered conditionally and that they should not take effect until the happening of some specified event, without the happening of which event or condition. they will have no validity as between the parties. It is undoubtedly true that under some circumstances proof of such conditions does not violate the parol-evidence rule and that such evidence only goes to show that the instrument never had vitality as a contract.

It is urged by appellant's counsel that the contract between the parties dated October 30, 1911, is ambiguous and that it may be construed to mean that the delivery of the notes was conditioned and that the Peavey Realty Company was the party primarily liable to the plaintiff for repayment of

the funds and that the liability of the defendant *Peavey* on the notes was conditional only.

It is claimed that the contract contemplated that any money plaintiff might advance for the purposes mentioned should be repaid out of the proceeds of the sale of the land, and that only in the event that he should find it impossible to compel repayment from this source was recourse to be had to the notes,—in short, that the contract was therefore a guaranty of collection only. We confess that we are unable to give any such construction to the contract. The agreement between the three parties interested was typical of many similar ventures which have been undertaken by parties having a desire to profit in real-estate transactions. The defendant *Peavey* and *D. M. Maxcy* were supposed to be familiar with the lands in question and to have had experience in operations of this character, but they were without requisite capital to make the desired investment. The plaintiff, living in a distant state, was able and willing to furnish the capital. Upon the terms specified in the agreement the Wisconsin parties were willing to give the time and labor necessary to make the undertaking a success. Doubtless they all expected the venture would be crowned with success or they would not have undertaken it.

We are unable to read into the contract any provision from which it can fairly be inferred that the payment of the notes was to depend upon the success of the enterprise or to be made out of the profits or dividends.

It is argued that this construction of the contract works injustice to *Peavey,* but in our view the construction contended for would work serious injustice to the plaintiff, and that no such construction could have been contemplated by the parties. If the enterprise had been a success, the defendant *Peavey* might have made very handsome profits without the expenditure of any capital whatever.

From its very nature the undertaking was a speculation,

the success of which depended upon the manner in which it might be managed, general financial conditions, and other future events which none of the parties could with any certainty predict. We find no ambiguity in the contract itself, and no language in it from which it should be inferred that the makers of the notes did not expect to share in losses as well as gains, if losses should occur. We do not find in the contract any language at all inconsistent with the plain terms of the notes.

Some claim is made that there was a parol agreement that the payment of the notes was not to be a primary liability, but out of profits to be realized by the corporation. But the only proof of this character related to some vague understanding between the two defendants, and the defendant *Peavey* testified that he never had any such agreement with the plaintiff.

It is argued by appellant's counsel that no money was received directly by the defendant and that there was no consideration for the notes. It is clear from the contract and the evidence that the money was advanced by plaintiff for the purpose of forming the corporation suggested by the other parties. The corporation was doubtless deemed the most convenient instrumentality for obtaining, holding, and conveying the title to the lands in question. The money represented by the notes in question was advanced for defendant's benefit, whether paid to defendant directly or to the corporation, and to enable him to share in the profits, if any, of the ambitious business enterprise. The agreement seems to have been carried out except that it was amended in some respects and was extended as to time. We are convinced by the testimony that, although the money furnished by plaintiff was used in buying the land, it was in legal effect a direct loan to defendant for the purposes stated in the contract and that there was full consideration for the notes.

The claim is made that the last five notes rest upon a different basis from the others, as they were given after the

expiration of the period mentioned in the contract of October 30, 1911. There is testimony that there was an oral agreement to extend beyond 1912 the portion of the contract which provides for advances, although defendant denied such an agreement. There is no dispute but plaintiff made the advances for taxes and other general expenses of the corporation and that the notes were given therefor. It is plain to us that all the moneys advanced by plaintiff were for the general purposes of the enterprise in which the three parties were interested, and with the full knowledge and sanction of defendant.

It is argued by defendant that none of the money advanced by plaintiff may properly be considered as having been applied in payment on behalf of defendant for any stock in the Peavey Realty Company. There were undoubtedly irregularities in the attempt to form the corporation. There was no regular stock subscription. The statute was not complied with in respect to issuing stock certificates. Nevertheless such proceedings were had that articles were filed, a certificate was issued by the secretary of state, certificates of stock were issued and delivered to each of the three parties, a meeting of stockholders was held, and directors and officers were chosen.

Defendant *Peavey* was elected president and *D. M. Maxcy* secretary, and they acted as such officers and directed the affairs of the company as if it had been properly organized. The Wisconsin parties in the enterprise were the originators and promoters. They received the plaintiff's money, managed the affairs of the concern, and if it was not properly organized as a corporation it was primarily their fault. There is no evidence of bad faith in the manner of effecting the organization, and the parties interested no doubt supposed that the statutes had been complied with. Assuming to act for a corporation legally organized, the president and secretary made their reports, bought and sold land, and made important contracts. If the venture had

been successful the defendant would have reaped the benefits of the investment and the validity of the corporation would probably have never been questioned. We do not think that he is now in a situation to repudiate his acts and to avoid liability on his notes because of irregularities in the manner of organizing the corporation. In other words, we hold that, at least so far as defendant's claims are concerned, the Peavey Realty Company was a *de facto* corporation and that the moneys advanced by plaintiff in payment for the land bought by the company and for the expenses were in part paid for the benefit of defendant and were the consideration for the stock received by him. It follows that he is estopped from urging as a defense in this case the invalidity of the corporate organization. *Slocum v. Head,* 105 Wis. 431, 81 N. W. 673; *Gilman v. Druse,* 111 Wis. 400, 87 N. W. 557; *Clausen v. Head,* 110 Wis. 405, 85 N. W. 1028; *Citizens Bank v. Jones,* 117 Wis. 446, 94 N. W. 329; *Wells v. Green Bay & M. C. Co.* 90 Wis. 442, 64 N. W. 69; *Black River Imp. Co. v. Holway,* 85 Wis. 344, 55 N. W. 418.

It is clear that if defendant had any valid counterclaim for services rendered in behalf of the corporation, it was against the latter and not against the plaintiff. At the beginning of the trial a motion was made by defendant to have the Peavey Realty Company made a party defendant, and it was renewed at the close of the trial. The motion was denied by the court. In claiming that the motion should have been granted, appellant's counsel rely on sec. 2610, Stats., but no affidavit was made in conformity with the statute. Moreover, under the circumstances, the granting or denying of the motion was within the discretion of the court, and in our judgment the discretion was properly exercised.

*By the Court.*—Judgment affirmed.