# CASES DETERMINED

AT THE

# August Term, 1906.

---

PETERSEN, Appellant, vs. ELHOLM, Respondent.

*September 15—December 4, 1906.*

*Compromise and settlement: Failure to plead: Failure to object to evidence on that ground: Appeal and error: Evidence: Corporations: Power of stockholders to settle corporate claims.*

[1. Whether in a civil action against a corporate officer for fraudulent conversion of corporate funds, seeking an accounting and judgment for the amount found to have been converted, the plaintiff cannot recover if the conversion was not fraudulent, *i. e.* if it did not amount to embezzlement, not determined.]

2. Although where a defense of compromise and settlement is not pleaded, and objection is made on that ground, evidence thereof is not admissible, yet where the evidence on both sides is received without objection as to its admissibility, and that question has been fully tried out, on appeal such question must be considered as having been litigated by consent.

3. In an action against a corporate officer for fraudulent conversion of corporate funds, seeking an accounting and judgment for the amount found to have been converted, the evidence, stated in the opinion, is *held* to sustain a conclusion that enumerated transactions were intended to be a full settlement of defendant's liabilities.

4. A stockholder, in that capacity alone, cannot settle and discharge corporate claims.

5. Although two persons own all the stock of a corporation they do not thereby become the corporation, and their individual action in settling a claim of the corporation against one of them does not bind the corporation.

VOL. 130—1

6. In such case, however, where one was, and continued to be, an officer of the corporation and superintendent of its business, and a settlement arranged between the two was afterwards brought to the notice of the corporation, acquiescence in the transactions and acceptance of the benefits thereby secured bind the corporation.

7. On a motion for rehearing, a statement in the original opinion that, while no defense of settlement was pleaded, the evidence of settlement was received without objection on that ground, and hence the question must be considered as having been litigated by consent, is *held* supported by the record.

APPEAL from a judgment of the circuit court for Racine county: LAWRENCE W. HALSEY, Judge. *Affirmed.*

Action to recover of the defendant moneys of Belle City Sash & Door Company alleged to have been fraudulently diverted by said defendant to his own use. The complaint alleged in substance the following facts: The Belle City Sash & Door Company, a corporation, was organized with plaintiff as president, William Dunphy as vice-president, Alfred Koerner as treasurer, and the defendant as secretary. Prior to such organization plaintiff and Dunphy were copartners operating a mill for the manufacture of sash, doors, and other furnishings for buildings. They had considerable material on hand and had unfinished contracts and other assets, and also had liabilities to the extent of $3,000 besides incumbrances on their plant to the amount of $9,000. Plaintiff, defendant, said Koerner, and Dunphy each took fifty shares of the capital stock of the corporation, each share being for $100. Koerner and defendant paid for their stock by performing, or agreeing to perform, services for the corporation hereafter mentioned, while plaintiff and Dunphy sold their plant and business to the corporation for $20,000, exclusive of unfinished contracts, the corporation assuming $1,200 of liabilities, which it afterwards paid. Defendant, in payment for his stock, agreed to devote one hour's time each day to the business of the corporation, to keep all books

and records, and perform according to modern business methods all duties in that regard. Koerner, in payment for his stock, undertook to build up and establish the business and credit of the corporation. Subsequently the latter sold his stock to defendant and withdrew from the corporation without having performed his agreement, and thereupon the defendant became the treasurer of the corporation and thereafter acted as such while retaining his office of secretary. As such treasurer he was intrusted with the receipt and disbursement of funds of the corporation and other duties incident to his office, and while such treasurer and from the month of August, 1901, to February, 1902, both months inclusive, he diverted the corporate funds and money fraudulently, and wilfully converted the same to his own use to the amount of $5,000, and has since refused to account for the same. The right to recover such diverted funds was duly assigned to the plaintiff before the commencement of this action. Judgment for $5,000 and costs was demanded.

The defendant answered denying all the allegations of fraudulent diversion of funds. The issues raised were sent to a referee to hear, try, and determine. He found the facts substantially as alleged in the complaint as to the organization of the corporation, the subscriptions to the capital stock, the manner in which the same was paid for, or agreed to be paid for, the transfer of the Koerner stock to the defendant, the latter's election as treasurer and his duties, and further found that the defendant had not at any time diverted or fraudulently converted to his own use any money of the corporation, and that by agreement of all stockholders about $2,000 of the corporate funds were used to pay the partnership indebtedness of Dunphy and plaintiff, in consideration whereof it was agreed that defendant might withdraw $1,000 from the corporation, which he did; that many irregularities appeared in the bookkeeping and great neglect in the making of proper entries, but that in general the discrepan-

cies and omissions were satisfactorily explained; further, that in February, 1902, plaintiff and defendant, who then owned all the corporate stock, met, and that plaintiff, representing the corporation, made a settlement with the defendant of all claims of said corporation against the defendant, by which settlement defendant assumed $1,500 of the corporate indebtedness and discharged the same; further, that defendant's stock in the corporation was then sold for $3,750 to third parties, and the money paid into the corporate treasury for the benefit of its creditors. On such findings of fact the referee concluded as matter of law that defendant was entitled to judgment. The finding exonerating defendant from having fraudulently diverted the corporate funds was based on the decision of the referee that the evidence was not sufficient to show that any funds were diverted as alleged under such circumstances as to render the defendant guilty of the offense of embezzlement. Exceptions were filed to the material findings of fact, and a motion was made by plaintiff for a re-reference of the case, which was denied, as was also a motion to correct the findings by striking out several as not properly conclusions of fact. The referee's report was, on motion of the defendant, confirmed, and judgment was rendered accordingly, and the plaintiff appeals.

For the appellant there were briefs by *Eaton & Eaton,* attorneys, and *W. W. Rowlands,* of counsel, and oral argument by *Mr. L. K. Eaton* and *Mr. Rowlands.*

*Wallace Ingalls,* for the respondent.

The following opinion was filed October 9, 1906:

WINSLOW, J. The complaint charged fraudulent conversion by the defendant of the funds of the corporation in various amounts and ways and at various times during a period of seven months. It was evident to the court that a long account was involved, and a reference was ordered. Upon the hearing before the referee the erroneous character of many

·of the entries made by defendant in the corporation books which were attacked by plaintiff was fully admitted, but as to a considerable number the defendant claimed that they were correct. Testimony was introduced *pro* and *con*.upon the disputed entries, but the referee made no finding upon them and stated no account, but filed a brief opinion stating that he had considerable doubt as to some of the items of alleged conversion, but that he was "unable to hold that the ·defendant stole or embezzled the moneys as charged, which is what would have to be found in order to report a decision in favor of the plaintiff." Apparently on this account alone he concluded that the defendant was entitled to judgment, ·and requested defendant's counsel to prepare the findings which he afterwards signed and which are summarized in the statement of the case. The proposition seems to be that in a civil action against a corporate officer claiming fraudulent conversion of corporate funds and seeking an accounting therefor and judgment for the amount found to have been converted, the plaintiff cannot recover if the conversion was not fraudulent, *i. e.* if it did not amount to embezzlement. We are not referred to any authority in support of this view, and we should hesitate greatly before giving assent to it; however, as we find it unnecessary to decide the question on account of considerations now to be stated, we express no opinion upon it. The referee found as a fact that *Petersen,* acting for the corporation, settled with the defendant for all corporate claims against him, and that the settlement so made was fully carried out. Of course, if this was the fact and the settlement be not impeached for fraud or mistake it closed the controversy. It is true there was no defense of settlement pleaded, and had objection been made to the evidence it would not have been admissible as the pleadings stood, but no such objection was made. The evidence on both sides upon the question was received without objection as to its admissibility on this ground; the question

was apparently fully tried out, and upon very familiar principles it must now be considered as having been litigated by consent.

The finding is challenged as unsupported by the evidence and this contention requires some consideration. It is undisputed that in February, 1902, *Petersen* and *Elholm* between them owned the entire stock of the corporation; that *Elholm* desired to get out of the business; that two persons, Hettrich and Jensen, were considering the advisability of buying two thirds of the business and operating the mill with *Petersen;* that in view of this contemplated purchase *Petersen, Elholm,* and one Owens (who was interested as the owner of a large mortgage on the plant) met at the Commercial Bank in Racine with the books of the company and spent considerable time in examination of the books and negotiation as to the terms upon which *Elholm* was to withdraw; that upon the books it appeared that *Elholm* owed the concern about $1,200, and that as a result of the meeting *Elholm* agreed to assume and pay $1,500 of the debts of the corporation (which he subsequently did pay), and surrendered his half of the stock on the condition insisted on by the defendant that whatever was received from Hettrich and Jensen was to go into the treasury of the corporation. It further appears that at the conclusion of this arrangement *Elholm* stepped out of the business, leaving *Petersen* and Owens in charge, and that a few days later Hettrich and Jensen purchased two thirds of the business, paying $5,000 therefor into the corporate treasury, and that the business was reorganized and the plaintiff *Petersen* became secretary of the corporation and superintendent of the business. As to the purpose of this meeting *Petersen* testified on cross-examination:

"*Elholm* left the corporation in February, 1902. I cannot tell the date exactly, probably around the 7th or the 8th. Had a settlement with him at the Commercial Bank. Car-

penter and Owens and myself were there. I brought him to the bank to settle. I found him at the office of Mitchell & Lewis Co. I think it was the 7th of February, 1902."

Owens testified:

"We met at the bank to get *Elholm*, so as to have the stock transferred, and have some understanding so we could run the concern, and some understanding about his account of $1,200 that appeared on the books. We wanted it settled up. We wanted him to pay what he owed the corporation. There was a great deal of talk there. He agreed to pay $1,500. After that three of us went down to the mill and had the stock transferred. *Petersen* was at the bank."

The defendant, after relating the transaction in detail, testified:

"My assuming these accounts and transferring my stock was to release me from liability, to pay up all irregularities and differences that existed between *Petersen* or the company and myself, and was considered on that day by *Petersen* and myself."

Mr. Carpenter, the cashier of the bank where the conference was held, testified: "They arrived at some settlement whereby *Elholm* was to pay about $1,500."

In view of these facts we find no difficulty in holding that the transaction in question was intended to be a full settlement of the defendant's liabilities to *Petersen* or the corporation, and was, in fact, a settlement of such liabilities so far as *Petersen,* acting individually, could make a settlement. But he could not in his capacity as stockholder alone settle and discharge corporate claims. Although he and *Elholm* owned all the stock they did not thereby become the corporation, and their mere individual action would not bind it. *Button v. Hoffman,* 61 Wis. 20, 20 N. W. 667; 2 Cook, Corp. (5th ed.) § 709. However, *Petersen* was more than a mere stockholder: he was president of the company and superintendent of its business from the start, and it appears that he bought all the merchandise, figured out the contracts,

collected most of the money, and in fact managed the busi-
·ness, leaving the office duties to *Elholm*. It might be for-
cibly contended that these broad powers carried with them
the power to make the settlement in question, but we are not
compelled to rest our conclusions on any doubtful proposi-
tion. It is well understood that where a corporation, with
notice of the facts, acquiesces in an unauthorized contract
made on its behalf and accepts the benefits thereof it becomes
bound by the contract. 2 Cook, Corp., *supra*. Upon the re-
organization of the business of the corporation after Het-
trich and Jensen came in, *Petersen* was elected secretary of
the corporation and superintendent of its business. He knew
all the facts, and his knowledge was notice to the corporation
of which he was the executive officer. *Brothers v. Bank of*
*Kaukauna,* 84 Wis. 381, 54 N. W. 786.

But it further appears that Hettrich and Jensen, who be-
came respectively president and treasurer of the corporation
after their purchase, also had knowledge of the material
facts of the transaction. The books of the corporation were
offered in evidence, and upon the daybook which was then
in use and continued to be used afterwards, under date of
February 11th, appears an entry signed by the defendant, by
which it appears that in consideration of a release from lia-
bility he assumed and agreed to pay $1,500 of the corporate
liabilities. The corporation records also show that Hettrich
and Jensen were present at the last meeting of the corpora-
tion before reorganization when defendant surrendered all
his stock for cancellation, hence they must have known this
fact and also the fact that the $5,000 paid by them for their
two-thirds interest, of which $3,750 would ordinarily go to
defendant for his half of the stock, was all paid into the cor-
porate treasury and actually used to discharge the mortgage
indebtedness of the corporation. This would seem to be
plenary proof of knowledge on the part of all the officers as
well as all the stockholders of the reorganized corporation

·of the material facts of the settlement with the defendant. Acquiescence in that settlement and acceptance of the benefits thereby secured is undeniable, and it follows that the corporation is' now bound thereby.

No further questions are necessary to be considered in this :aspect of the case.

*By the Court.*—Judgment affirmed.

The appellant moved for a rehearing.
The following opinion was filed December 4, 1906:

WINSLOW, J.   It is stated in the opinion that, while no ·defense of settlement was pleaded, the evidence of settlement was received without objection on that ground, and hence that the question must be considered as having been litigated by consent.   This statement is challenged by the appellant in his brief upon the motion for rehearing, and it is confidently claimed that the evidence tending to show the settlement at the bank was duly objected to on the trial, as well :as the evidence tending to show a prior settlement made with Dunphy.   In view of this challenge we have again carefully ·examined the record to ascertain whether our statement is erroneous.   From this examination it appears that the facts concerning the settlement with Dunphy and the transfer of his stock to *Elholm* were testified to by Mr. Rowlands as a witness for the plaintiff before any testimony for the· defense was put in, and the written proposition, acceptance, and release were at the same time offered and received in evidence.   The plaintiff, *Petersen,* also testified directly to the fact of the settlement with Dunphy upon his direct examination, but said that the business was conducted with *Elholm.* This certainly opened up the whole subject of the Dunphy settlement to explanation by the defendant.

As to the settlement with the defendant, not only did the plaintiff testify upon cross-examination, without objection,

that he had a settlement with *Elholm* at the bank about February 7th, but, on the case being turned over to the defendant, *Elholm* testified at length to the fact of settlement and all its terms without objection that it was not pleaded, or any other objection going to the merits. It is true that at the close of *Elholm's* direct examination, after the testimony of settlement had all gone in, the following entry appears in the bill:

"Plaintiff's counsel reserving in due time and form all right of objection to any portion of the direct examination of defendant on the ground of competency and materiality."

We cannot regard this general notation, made after the reception of the testimony, as fairly apprising either court or counsel of the objection now claimed. Furthermore, the testimony of Mr. Carpenter, the cashier of the bank, tending to show the settlement, was received without objection on this ground. So far as the record before us is concerned (and we can inquire no further) the statement made in the opinion is fully supported.

*By the Court.*—Motion for rehearing denied with $10 costs.