### TYLER et al. v. DANE COUNTY, WIS., et al.

(District Court, W. D. Wisconsin. May 28, 1923.)

1. **Courts** ⬥⟿303(2)—**While state treasurer is individually liable to repay taxes paid under unconstitutional statute, suit against him as an office is against state, and prohibited by Constitution.**

A state treasurer is individually liable to repay taxes paid to him involuntarily and under protest, where the tax is exacted under an unconstitutional statute; but if the act is brought against the treasurer "as treasurer," and the relief sought is a judgment against that officer in his official capacity, so that he would be compelled to pay out of the public funds in the treasury of the state, the action is in reality one against the state. and within the inhibition of the Eleventh Amendment to the United States Constitution.

2. **Courts** ⬥⟿303(2)—**County and treasurer liable for collection of tax under invalid statute.**

The collection and receipt of taxes by a county and its treasurer over protest under an unconstitutional statute was unlawful, and both the

county and its treasurer are liable in an action for their recovery; the Eleventh Amendment to the United States Constitution not being applicable, though the county has remitted to the state treasurer the taxes collected, and even though it be assumed that the county and its treasurer were acting merely as agents in the transaction.

3. **Taxation ☞543(1)—In Wisconsin, independent action lies to recover taxes paid under invalid statute.**

In Wisconsin, an independent action lies to recover a tax paid under an invalid statute under protest, and the determination of the existence and amount of the tax by the county court is not res judicata, and contention that sole remedy is by appeal is without merit.

4. **Constitutional law ☞283—Taxation ☞20—Tax must be limited to property within territorial jurisdiction of state.**

A tax on property must be limited to property within the territorial jurisdiction of the state, and property situated without the jurisdiction is beyond the state's power, and the exaction of a tax upon it is in violation of the Fourteenth Amendment to the Constitution.

5. **Taxation ☞868(1)—Shares of stock have their situs at domicile of owner and state creating corporation.**

Shares of corporate stock, like other personal property, have their situs at the domicile of the owner, and they also have a situs in the state creating the corporation, and the mere presence of the corporate property in the foreign state gives the stock no situs there for the imposition of an inheritance tax.

6. **Courts ☞366(6)—Construction of state statutes primarily for state courts.**

Construction of state statutes, determining their scope for taxation purposes, is primarily a question for the state court.

7. **Courts ☞366(2)—Whether state statute violates federal Constitution federal question.**

Whether state statute violates the federal Constitution is a federal question, and it is deemed appropriate for a federal court to avoid the question of construction, if that may be done reasonably.

8. **Corporations ☞9—Charter constitutes contract between state and corporation, and shareholders and corporation, and state and shareholders.**

The charter of a private corporation constitutes a contract, not only between the state and the corporation, and the shareholders and the corporation, but also between the state and the shareholders.

9. **Taxation ☞868(1)—Corporation cannot bind stockholders to assignment of new situs to his stock to permit levy of transfer tax thereon.**

The general rule is that a corporation is not an agent of its stockholders as individuals, but, assuming an agency exists for some purposes, it cannot bind a stockholder to assignment of a new and additional situs to his own separate property, his shares of stock, to permit the levy of a transfer tax thereon, in the event of his demise.

10. **Corporations ☞174—Charter and laws of state creating corporation determine rights and liabilities of stockholders.**

The charter and governing laws of the state in which a corporation is created determine the rights and liabilities of stockholders.

11. **Taxation ☞859(8)—Statute permitting inheritance tax as to shares of stock of nonresident in foreign corporation invalid.**

St. Wis. 1921, § 72.01, imposing an inheritance tax on the stock of a nonresident stockholder in a foreign corporation doing business within the state, violates the Fourteenth Amendment to the United States Constitution.

At Law. Action by Charles H. Tyler and others, as executors of the estate of Charles E. Cotting, deceased, against Dane County, Wis., and others. On demurrer to complaint. Sustained as to one defendant, and overruled as to others.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Sanborn, Blake & Aberg, of Madison, Wis., for plaintiffs.

William J. Morgan and Herman L. Ekern, Attys. Gen., Franklin E. Bump, Asst. Atty. Gen., and John Harrington, Inheritance Tax Counsel, of Wisconsin, and Theodore G. Lewis, Dist. Atty., of Madison, Wis., for defendants.

LUSE, District Judge. The plaintiffs, citizens of Massachusetts, bring this action as executors of the estate of Charles E. Cotting, who in his lifetime was a citizen of Massachusetts, against the defendants to recover $6,163.32, alleged to have been exacted by the defendants and paid by the plaintiffs involuntarily under duress and protest, by way of inheritance taxes upon shares of stock owned by the decedent in corporations foreign to the state of Wisconsin, but which did business and owned property in this state. The complaint avers ownership by plaintiffs' decedent of various shares of stock in corporations, some of which were organized and existed under the laws of the state of Wisconsin, and some of which were organized and existed under the laws of foreign states, and that in the process of settlement of the estate, and in order that the plaintiffs, as executors, might have the stock transferred to them, it became necessary to have ancillary administration of said estate in the state of Wisconsin, with reference particularly to the transfer of the shares of stock in the corporations organized under the laws of the state of Wisconsin, and that in the process of such administration it was claimed by the public administrator of Dane county, who was appointed special administrator of the estate in Wisconsin for the purpose of such ancillary administration, and by the tax commission of the state of Wisconsin, and was determined by the county court of Dane county, that before these plaintiffs could have transfer of the shares in the Wisconsin corporations an inheritance tax must be paid to the state of Wisconsin upon all the stock transferred including that in the foreign corporations aforesaid, and that in order to effect a transfer of such stock in the Wisconsin corporations, and under such coercion and duress, and under protest, the plaintiffs paid the sum of $6,163.32, the amount found due on the transfer of stock in the foreign corporations, to the defendant Rinder as treasurer of Dane county, and that he and the defendant Dane county paid over to the defendant Henry Johnson, as treasurer of the state of Wisconsin, $6,101.69 of such sum. It is further averred, in substance, that the statute of Wisconsin does not warrant the interpretation placed upon it by the collecting officers of the state, including the county court of Dane county, and that, if the laws of Wisconsin are so construed as to warrant such result, the same are unconstitutional under the provisions of the Fourteenth Amendment to the Constitution of the United States.

Separate demurrers to the complaint are interposed by the defendant Henry Johnson, on the one hand, and the remaining defendants, on the other, the grounds of demurrer being identical, as follows: (1) That the court has no jurisdiction of the subject-matter of the action. (2) That there is a defect of parties defendant in this action, in this, to wit, that it appears by said complaint that the state of Wisconsin is

a party in interest and is a necessary party thereto. (3) That several causes of action have been improperly united. (4) That the complaint does not state facts sufficient to constitute a cause of action.

[1] The first two assigned grounds of demurrer may be treated together, and those grounds with reference to the defendant Johnson will be considered first. The theory that the statutes of Wisconsin do not warrant such construction as to impose a transfer tax upon stock in foreign corporations owned by nonresident decedents where the corporations do business and own property within the state of Wisconsin, was not seriously urged by the plaintiffs upon the oral argument nor in their briefs, and in discussing the question under consideration it will be assumed for its purpose only that the phase of the Wisconsin inheritance tax law here involved is unconstitutional. On this assumption the case of Atchison, etc., Ry. Co. v. O'Connor, 223 U. S. 280, 32 Sup. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050, together with Erskine v. Van Arsdale, 15 Wall. 75, 21 L. Ed. 63, and the Virginia Coupon Cases, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185, are deemed to establish the individual liability of a treasurer to repay taxes paid to him involuntarily and under protest, where the tax is exacted under an unconstitutional statute. The case of Smith v. Reeves, 178 U. S. 436, 20 Sup. Ct. 919, 44 L. Ed. 1140, however, establishes the proposition that, if an action to recover moneys exacted by way of illegal taxes be brought against a state treasurer as treasurer, and the relief sought is a judgment against that officer in his official capacity, so that judgment would compel the defendant to pay out of the public funds in the treasury of the state a certain sum of money, then the action is in reality one against the state, and within the inhibition of the Eleventh Amendment to the Constitution of the United States.

The doctrine which renders government officials, acting as such, individually responsible for their acts done under an unconstitutional law, rests upon the theory that an unconstitutional law is no law at all, and that the officer who acts under it is afforded no protection, and is judicially regarded as acting in his personal capacity only. The case of Atchison Ry. Co. v. O'Connor was to enforce such personal liability. If the instant action is brought merely to enforce the personal responsibility of Henry Johnson, then the action is not in fact against the state, and, so far as the point now under discussion is concerned, is maintainable. If, however, the instant case is one the result of which will be to compel the defendant Henry Johnson, as state treasurer, to pay out of the public funds of the state the moneys sought to be recovered, then the action is one in reality against the state, within the doctrine of Smith v. Reeves. So far as this point is concerned, no distinction is perceived between an action in which recovery of illegal taxes is sought, as in Smith v. Reeves, supra, and one in which the recovery is based upon the unconstitutionality of the law under which the taxes are exacted.

The defendant Johnson is named in the summons as "Henry Johnson, State Treasurer of Wisconsin," and is similarly named in the complaint. The prayer for relief, as it was originally drawn, prayed judgment "against Henry Johnson, as treasurer of the state of Wisconsin."

Upon leave plaintiffs amended this prayer in several particulars, so that the prayer now demands "Judgment against the defendants." Should judgment result, it would of necessity run against "Henry Johnson, State Treasurer of Wisconsin." In other words, judgment would go against that defendant in his official capacity, and not as an individual who has committed a wrong against the plaintiffs. I am unable to avoid the conclusion that the demurrer of the defendant Johnson must be sustained because of these considerations.

[2] In considering the complaint against Dane county and its treasurer, it is deemed that the Eleventh Amendment to the Constitution of the United States is not applicable. Actions against municipalities, including counties, for the recovery of illegal taxes, are familiar and are well illustrated by the case of Ward v. Love County, 253 U. S. 17, 40 Sup. Ct. 419, 64 L. Ed. 751, in which it was held in substance that it was no defense that a portion of the taxes had been paid over by the defendant county to the state and other municipal bodies. Cases in which recovery had been allowed against federal officers and agents in the federal courts are numerous, and the principle underlying them is applicable, as I see it, to the defendant treasurer of Dane county. As already indicated, it being assumed that the law under which these taxes were collected is unconstitutional, it follows that the acts of the treasurer and of Dane county in collecting the taxes are as though there were no law covering the subject. The collection and receipt of the taxes by these defendants was unlawful, and the taxes being paid under coercion, and payment protested, that the county treasurer has paid the taxes over to the county, and the county has remitted to the state treasurer all but 1 per cent. thereof, is no defense. The payment under protest and duress was notice that payment over to the state treasurer would be at their peril, even though it be assumed that the county and its treasurer were acting merely as agents in the transaction. The case of Elliott v. Swartwout, 10 Pet. 137, 9 L. Ed. 373, is illustrative of this doctrine, which has been consistently applied, so far as I am informed, down to and including the case of Eisner v. Macomber, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

[3] The third ground of demurrer, to wit, that several causes had been improperly united, has not been pressed, either on the oral argument or in the briefs, and it is not deemed necessary to discuss it separately particularly in view of the amendment of the complaint. The court views the action as one to recover the entire amount of taxes paid on the transfer of stock in the corporations foreign to the state of Wisconsin, in the collection of which both the defendants Dane county and its treasurer took part and are responsible to the plaintiffs, providing the tax was illegal and was paid and received as alleged in the complaint. It is contended that the determination of the existence and amount of the tax by the county court of Dane county is res adjudicata, and the remedy was by appeal. In Beals v. State, 139 Wis. 544, 121 N. W. 347, it was held that such acts are "really but steps in the enforcement of a tax law of the state, rather than judgments in judicial controversies," and that an independent action to recover a tax paid under protest would lie. On its authority, therefore, this contention is overruled.

This brings us to the question: Is a cause of action stated? By section 72.01 of the Wisconsin Statutes a tax is imposed—

"upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person [with certain exceptions] in the following cases: * * *

"(1) *While a Resident of State.* When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state.

"(2) *Nonresident's Property Within the State.* When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a nonresident of the state at the time of his death."

Prior to 1913, under the foregoing and appropriate supplementing sections of the succession tax law, the transfer of shares in corporations domestic to Wisconsin were taxed upon their full value, regardless of the location of the property of the corporation, and whether owned by residents or nonresidents of the state, and no effort was made to tax the transfer of shares in foreign corporations held by nonresidents, but in that year the law was amended to provide:

Sec. 72.11 (3): "Where stocks, bonds, mortgages or other securities of corporations organized under the laws of this state or of foreign corporations owning property or doing business in this state shall have been transferred by a nonresident decedent, the tax shall be upon such proportion of the value thereof as the property of such corporation in this state bears to the total property of the corporation issuing such stocks, bonds, mortgages, or other securities."

See Chapter 763, Laws 1913.

By further provisions of the inheritance tax law effective at the time involved in this action, foreign and domestic corporations were prohibited from delivering or transferring assets of a nonresident decedent to the latter's executors, without notifying the state tax commission, or without retaining a sufficient amount thereof to pay any tax which might be imposed, unless by order of the proper court authorizing such transfer. Failure to observe either of such prohibitions renders the corporation liable for the tax due, and willful violation of such provisions renders the corporation liable to forfeiture of its charter or license to do business within the state.

By the 1913 amendment the state surrendered its conceded right to tax to the full value transfers of stock in domestic corporations held by nonresidents, and substituted therefor a tax on a portion of the value of the stock in proportion as the property of the corporation within this state bore to its entire property, and, evidently as a reciprocating measure, sought to tax transfers of stock in foreign corporations, held by nonresident decedents, in the same manner. Much has been and can well be said favorable to such legislative policy as tending to solve many perplexing economic questions which have accompanied the development of succession taxes in the various states, but approval or disapproval is not within the functions of the court. Its duty is to determine whether any constitutional limitation has been violated, resolving all reasonable doubts in favor of the law, and there its duty and powers end.

It is apparent that Wisconsin seeks by its law above quoted to impose a transfer tax upon every transfer by a nonresident decedent

which is within the power of the state to tax. The use of the words "property within the state or within its jurisdiction" indicates this to my mind. It is this section which imposes the tax. The same language also imports an intention not to exceed the jurisdiction, but the terms of chapter 763, Laws of 1913, clearly call for the imposition of the tax now complained of. The taxing officers have followed the statutory directions, and if the tax is illegal it is because the 1913 amendment is unconstitutional in so far as it imposes a tax on the transfer of stock in foreign corporations held by a nonresident decedent. It is the contention of the plaintiffs that the imposition of this tax violates the due process clause of the Fourteenth Amendment to the federal Constitution, in that it is beyond the power of the state to tax the transfer of stock in a foreign corporation held by a nonresident on universal succession to nonresident executors. The contention of the defendants is that the corporations involved all own property in this state, are doing business here and such property is within the jurisdiction of the taxing power of the state, that shares represent an undivided interest in such property generally, and moreover, if this be not true generally, that in admitting the corporations in question the state had the power to condition their entry and continuance in business here upon their shares being deemed undivided interests in the property of the corporation located here for inheritance tax purposes, and that this power has been exercised.

[4] It is well settled that a tax on property must be limited to property within the "territorial jurisdiction of the state. Property situated without that jurisdiction is beyond the state's taxing power, and the exaction of a tax upon it is in violation of the Fourteenth Amendment to the Constitution." Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395, 399, 27 Sup. Ct. 499, 51 L. Ed. 853; Louisville Ferry Co. v. Kentucky, 188 U. S. 385, 23 Sup. Ct. 463, 47 L. Ed. 513; Delaware, etc., R. R. v. Pennsylvania, 198 U. S. 341, 25 Sup. Ct. 669, 49 L. Ed. 1077; Union Transit Co. v. Kentucky, 199 U. S. 194, 26 Sup. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493; International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617. But the tax involved here is not upon the property, but, as said in State v. Bullen, 143 Wis. 512, 128 N. W. 109, is "upon the transfer, transaction, or right to receive property"— upon the right of succession; or as said in Beals v. State, 139 Wis. 544, 121 N. W. 347:

"The inheritance tax levied by chapter 44, Laws of 1903, is not a tax upon property or property rights [in any sense], but purely an excise tax levied upon the 'transfer' or transaction, and merely measured in amount by the amount of property transferred."

To like effect are the decisions of the Supreme Court in Mager v. Grima, 8 How. 490, 493, 12 L. Ed. 1168, U. S. v. Perkins, 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287, and Magoun v. Illinois Trust, etc., Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037. That the Wisconsin court views the right to take property by inheritance or by will as inherent, and protected by the Constitution, subject only to reasonable regulation and tax (Nunnemacher v. State, 129 Wis. 190,

108 N. W. 627, 9 L. R. A. [N. S.] 121, 9 Ann. Cas. 711), while the Supreme Court has said in the Magoun Case, supra, that "the right to take property by devise or descent is the creature of the law, and not a natural right," may be noted in passing, although deemed of no particular importance in the instant case.

Having in mind the nature of the tax, it seems to follow naturally that, in the absence of power over either the transition of the property from the decedent or to his successor or the property itself, the state may not impose the tax. If the laws of a state need be invoked, not necessarily actually, but potentially, to effect the transfer, such state has power to tax it. So it was held in Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439, in which was involved the validity of a tax imposed by New York upon the transfer of a debt owing by a corporation domestic to New York, to an Illinois decedent, that New York had jurisdiction to impose the tax because it had jurisdiction of the person of the debtor, and that whether or no it was necessary in the particular case to actually invoke such laws, was immaterial, the fact remaining that by the laws of New York, payment by the debtor as well as such payment to another than the original creditor, was effected. To sustain an inheritance tax, said the court in In re Swift, 137 N. Y. 77, 32 N. E. 1096, 18 L. R. A. 709, it is a fundamental requirement that "there shall be jurisdiction over the subject taxed" or "an actual dominion over the subject of taxation at the time the tax is imposed." "It is obvious," said the same court in Bronson's Estate, 150 N. Y. 8, 44 N. E. 707, "that the state has no jurisdiction over a right of succession which accrues under the laws of the foreign state." Hence on principle, by analogy, and in the light of the decisions, abundant ground is found sustaining the Massachusetts court in Welch v. Burrill, 223 Mass. 87, 111 N. E. 774, where it is said:

"Jurisdiction for the purpose of imposing a succession tax exists only when the exercise of some essential privilege incident in the transfer of the title depends for its legality upon the law of the state levying the tax."

Indeed, in the case last mentioned, it was held that the state of Michigan was without authority to levy an inheritance tax upon the transfer of stock in a Wisconsin corporation owning property in Michigan, where the stock was owned by a decedent of Massachusetts, and is thus directly in point to sustain the contentions of the plaintiffs herein. Whether Wisconsin had power to levy the tax in question depends on whether the stock in the corporations had a situs here sufficient for the purpose.

It is true there are authorities to the effect that shares in a corporation represent an undivided interest in the property of the corporation. See Bronson's Estate, 150 N. Y. 8, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632; In re Culver's Estate, 145 Iowa, 1, 123 N. W. 743, 25 L. R. A. (N. S.) 384. But in such cases the courts were dealing with domestic corporations the stockholders of which and their relations to the corporations were concededly subject to regulation and change by the statutes under consideration. Except as so explained, such cases are not in accord with the great weight of au

thority, which is as stated by Justice Hughes in Hawley v. Malden, 232 U. S. 1, 34 Sup. Ct. 201, 58 L. Ed. 477, Ann. Cas. 1916C, 842, as follows:

"It is well settled that the property of the shareholders in their respective shares is distinct from the corporate property, franchises and capital stock, and may be separately taxed, * * * and the rulings in the state cases which we have cited proceed on the view that shares are personal property and, having no situs elsewhere, are taxable by the state of the owner's domicile, whether the corporations be foreign or domestic."

To like effect are Eisner v. Macomber, 252 U. S. 189, 208, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Van Allen v. Assessors, 3 Wall. 573, 18 L. Ed. 229; Hatch v. Reardon, 204 U. S. 152, 159, 27 Sup. Ct. 188, 51 L. Ed. 415, 9 Ann. Cas. 736, in which a certificate of stock is denominated "a constituent of title"; Jellenik v. Huron Copper Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647; Button v. Hoffman, 61 Wis. 20, 20 N. W. 667, 50 Am. Rep. 131; Second Ward Savings Bank v. Milwaukee, 94 Wis. 587, 69 N. W. 359; Petersen v. Elholm, 130 Wis. 1, 109 N. W. 76, 1034; Pietsch v. Krause, 116 Wis. 344, 93 N. W. 9.

By section 1751 of the Wisconsin Statutes it is provided that "the capital stock of every corporation, divided into shares, shall be deemed personal property," and by the Uniform Stock Transfer Act adopted in 1913 the idea of the independence of the shares as property, distinct from that of the corporation, is accentuated by provisions permitting transfer by delivery of the certificate, indorsed in blank, notwithstanding charter or other formerly equally binding regulations requiring transfer on the books of the corporation. In Eisner v. Macomber, 252 U. S. 189, 208, 40 Sup. Ct. 189, 194 (64 L. Ed. 521, 9 A. L. R. 1570), it is said:

"Nor is it [the stockholder's interest] the interest of an owner in the assets themselves, since the corporation has full title, legal and equitable, to the whole."

In People v. Dennett, 276 Ill. 43, 114 N. E. 493, a case involving questions very similar to those here, and in which apparently similar contentions were made, the court said:

"It is further contended by counsel for the people that Thomas A. Griffin had an interest in the property of the Griffin Wheel Company, and, 50 per cent. of that property being located in this state, it came within the terms of the statute. The relation of the stockholder to the property of the corporation has been so long settled by uniform decisions that it is no longer the subject of discussion. The owner of shares of stock in a corporation is not the owner of the property or of any share of the property * * * in any legal sense."

[5] No escape is seen from the conclusion that the tax here involved may not be justified on the theory that the transfer taxed was of an interest in property located in Wisconsin. On the contrary, the transfer was of distinct, though intangible, personal property transferred by universal succession from the decedent in Massachusetts to the complainants as executors appointed and resident in that state. Apart from the effect of the Wisconsin Statutes relating to the admission of foreign corporations to do business within the state, which will be discussed later, it is clear that shares of stock, like other personal

property, have their situs at the domicile of the owner. They also have a situs in the state creating the corporation. Welch v. Burrill, 223 Mass. 87, 111 N. E. 774; In re Enston, 113 N. Y. 174, 181, 21 N. E. 87, 3 L. R. A. 464; In re James, 144 N. Y. 6, 10, 38 N. E. 961; Moody v. Shaw, 173 Mass. 375, 53 N. E. 891. In some cases stock has been held to have a situs at the place where the certificate was kept, and in others a situs for some purposes has been established where the corporation had a stock transfer office. Estate of McMullen, 114 Misc. Rep. 505, 187 N. Y. Supp. 248, reversed on other considerations 199 App. Div. 393, 192 N. Y. Supp. 49; London Bank v. Aronstein, 117 Fed. 601, 54 C. C. A. 663; Simpson v. Jersey City Co., 165 N. Y. 193, 58 N. E. 896, 55 L. R. A. 796; Lockwood v. U. S. Steel Corporation, 209 N. Y. 375, 103 N. E. 697, L. R. A. 1915C, 471. But the mere presence of the corporate property in a state gives the stock no situs there for the imposition of an inheritance tax.

"* * * The circumstance that there is property of the corporation in Michigan does not confer jurisdiction upon that state to impose a tax on the succession to the shares of stock of the corporation. That property does not in any direct sense belong to the shareholders. The full and complete legal title to it is in the corporation. It is impossible to predicate jurisdiction over nonresident shareholders in a foreign corporation merely upon the physical presence of property belonging to that corporation within the territory of a state." Welch v. Burrill, supra.

And to like effect, though decided primarily upon construction of the particular statutes, are People v. Dennett, 276 Ill. 43, 114 N. E. 493; People v. Blair, 276 Ill. 623, 115 N. E. 218; State v. Dunlap, 28 Idaho, 784, 156 Pac. 1141, Ann. Cas. 1918A, 546; Estate of Harkness, 83 Okl. 107, 204 Pac. 911. The transfer of the stock in question from the decedent to these complainants is effected by the laws of Massachusetts, and may be completed with the aid of the laws of those states which created the corporations, and it is apparent that such transfer receives no support, legal or otherwise, from the laws of Wisconsin.

I perceive no element of jurisdiction in the state of Wisconsin to tax this transfer, unless it be the result of entry by the various corporations under the provisions of the local law governing their admission. To this subject we now address ourselves. Determination of the effect of such laws was expressly passed by the Massachusetts court in the case of Welch v. Burrill, supra, and I am informed of no authorities where the exact question has been dealt with. It is undoubtedly true that the doctrine which ascribes to intangible property a situs at the domicile of its owner is a fiction which must yield to the mandate of the Legislature having authority to deal with it. The sovereign creating a corporation may divorce the situs of shares therein from the domicile of the owner, and assign to them a situs for taxation purposes in the creating state or elsewhere. Tappan v. Merchants' Bank, 19 Wall. 490, 22 L. Ed. 189; Corry v. Baltimore, 196 U. S. 466, 25 Sup. Ct. 297, 49 L. Ed. 556; Rogers v. Hennepin County, 240 U. S. 184, 191, 36 Sup. Ct. 265, 60 L. Ed. 594. And as to tangible personal property within its jurisdiction a state may separate its situs from the domicile of the owner. New Orleans v. Stem-

pel, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174; Pullman Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613. But the fiction must prevail in the absence of statute, adopted by a sovereign having jurisdiction.

Section 1770b of the Wisconsin Statutes contains the provisions relating to the admission and continuance of business by foreign corporations. At the time of its admission into the state and in its subsequent annual reports, the corporation by its officers is required to state under oath, among other things, the proportion of its capital stock represented in this state by its property located or to be acquired therein and by its business to be transacted therein; that such proportion shall be computed by taking the gross business in dollars of the corporation in the state, adding the same to the full value in dollars of the property of the corporation located in the state, the sum so obtained being the numerator of a fraction of which the denominator consists of the total gross business in dollars of the corporation and added to the full value in dollars of the entire property of the corporation both within and without the state, which fraction is used in determining the amount of the fees to be paid by the corporation for the privilege of doing business within the state. Paragraph "e" of subsection 3, and paragraph "e" of subsection 7, of section 1770b. A statement is required to be filed under oath each year, agreeing that such corporation, as a condition of its being permitted to begin or continue doing business within the state, shall comply with all the laws of the state with regard to foreign corporations. Paragraph "h" of said subsection 3. It is required that the secretary of state be appointed the agent of the corporation upon whom process may be served in causes respecting any liability arising out of any business, contract or transaction within the state. By subdivision 10 of section 1770b it is provided:

"All foreign corporations and the officers and agents thereof doing business in this state, shall be subjected to all the liabilities and restrictions that are, or may be imposed upon corporations of like character, organized under the laws of this state, and shall have no other or greater powers."

The purpose of the statute last above quoted is—

"to produce uniformity in the powers, liabilities, duties, and restrictions of foreign and domestic corporations of like character and bring them all under the influence of the same law." Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679.

[6, 7] None of the foregoing provisions purport to deal with the stockholders or their liabilities. They operate directly upon the corporation itself, without attempting in so many words at least to reach beyond it. Only in the inheritance tax law is that intent apparent. It is perhaps not altogether clear that Wisconsin has conditioned entry or continuance of business upon giving a situs within the state to the stock in such corporations for succession tax purposes, but inasmuch as that is perhaps implied in the broader provision declaring that the inheritance tax shall be upon the transfer of such stock, owned by a nonresident decedent, and in the absence of construction by the state court, I shall assume correct the construction, contended for by the

state's counsel, that entry into the state is conditioned upon the submission of stock owned by nonresident stockholders to the jurisdiction of the state for transfer tax purposes. Construction of state statutes determining their scope for taxation purposes is primarily a question for the state courts. New Orleans v. Stempel, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174. Whether a state statute violates the federal Constitution is a federal question, and it is deemed appropriate to avoid the question of construction if that may be done reasonably.

So assuming, we must inquire as to the power of the state to make such a condition for entry or continuance in business, and this may be viewed from two angles: (a) With respect to the corporation; and (b) with respect to the nonresident stockholder. That the right of the state to condition the entry or continuance in business of a foreign corporation, within the state, is subject to constitutional limitations, is settled. That a state may not tax a foreign corporation as to its property outside the confines of the state, even under the guise of a privilege or franchise tax imposed apparently as a condition of entry or continuance, has been held in several cases. Looney v. Crane Co., 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230; International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617. In the latter case, Justice Van Devanter, in the fourth of the six propositions held to have been determined by previous cases, says:

"4. That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a state in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the state cannot require the corporation as a condition of the right to do a local business therein to submit to a tax on its interstate business or on its property outside the state."

If it be of moment that the corporations involved in those cases were engaged in interstate as well as local business, it would seem to be met by the observation of Chief Justice Taft in Terral v. Burke Construction Co., 257 U. S. 529, 532, 42 Sup. Ct. 188, 189 (66 L. Ed. 352, 21 A. L. R. 186):

"The principle does not depend for its application on the character of the business the corporation does, whether state or interstate, although that has been suggested as a distinction in some cases."

If a corporation may not be taxed on its own property located outside the state as a condition for doing business within it, it would seem to follow logically that it may not be required to bring with it into the state, for succession purposes, property of third persons, to wit, shares in its stock belonging to its nonresident stockholders. The latter proposition involves an extension of the state's power at least one step beyond that involved in the former. Viewed from this angle, I am of the opinion that the situs of the stock transferred to the plaintiffs was not validly changed to Wisconsin.

Viewing the question from the angle of the stockholder, it is pertinent to revert to the cases of Tappan v. Bank, 19 Wall. 490, 22 L. Ed. 189, and Corry v. Baltimore, 196 U. S. 466, 25 Sup. Ct. 297, 49 L. Ed. 556, cited above. In the first named of those cases it is said:

"The power of taxation by any state is limited to persons, property, or business within its jurisdiction. Personal property, in the absence of any law to the contrary, follows the person of the owner, and has its situs at his domicile. But, for the purposes of taxation, it may be separated from him, and he may be taxed on its account at the place where it is actually located. These are familiar principles and have been often acted upon in this court and in the courts of Illinois. If the state has actual jurisdiction of the person of the owner, it operates directly upon him. If he is absent, and it has jurisdiction of his property, it operates upon him through his property. Shares of stock in national banks are personal property. They are made so in express terms by the act of Congress under which such banks are organized. They are a species of personal property which is, in one sense, intangible and incorporeal, but the law which creates them may separate them from the person of their owner for the purposes of taxation, and give them a situs of their own. This has been done. By section 41 of the National Banking Act, it is in effect provided that all shares in such banks, held by any person or body corporate, may be included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed under state authority, at the place where the bank is located, and not elsewhere. This is a law of the property. Every owner takes the property subject to this power of taxation under state authority, and every nonresident, by becoming an owner, voluntarily submits himself to the jurisdiction of the state in which the bank is established for all the purposes of taxation on account of his ownership. His money invested in the shares is withdrawn from taxation under the authority of the state in which he resides and submitted to the taxing power of the state where, in contemplation of the law, his investment is located. The state, therefore, within which a national bank is situated has jurisdiction, for the purposes of taxation, of all the shareholders of the bank, both resident and nonresident, and of all its shares, and may legislate accordingly."

In the Corry Case it is said:

"The principle upheld by the rulings of this court to which we have referred, concerning the taxation by the states of stock in national banks, is that the sovereignty which creates a corporation has the incidental right to impose reasonable regulations concerning the ownership of stock therein, and that a regulation establishing the situs of stock for the purpose of taxation, and compelling the corporation to pay the tax on behalf of the shareholder, is not unreasonable regulation. Applying this principle, it follows that a regulation of that character, prescribed by a state, in creating a corporation is not an exercise of the taxing power of the state over persons and things not subject to its jurisdiction. And we think, moreover, that the authority so possessed by the state carries with it the power to endow the corporation with a right of recovery against the stockholder for the tax which it may have paid on his behalf."

[8] As I read these cases the right of the creating state to "impose reasonable regulations concerning the ownership of stock" results from the fact, not only that such regulations are "the law of the property," but "every nonresident, by becoming an owner, voluntarily submits himself to the jurisdiction of the state." It is manifest that the creating state in the first instance deals with natural persons who associate themselves together for the purpose. The charter of a private corporation constitutes a contract, not only between the state and the corporation, the shareholders and the corporation, but also between the state and the shareholders. This is settled law. Wilmington Railroad v. Reid, 13 Wall. 264, 20 L. Ed. 568; Larabee v. Dolley (C. C.) 175 Fed. 365, p. 390; Garey v. Mining Co., 32 Utah, 497, 91 Pac. 369, 12 L. R. A. (N. S.) 554; Cook on Corporations (3d Ed.) §§ 492 to 496, inclusive. The transaction necessarily involves the as-

sent of the shareholders. Beyond doubt the shareholder "voluntarily submits himself to the jurisdiction of the state."

[9] But the foreign corporation laws of Wisconsin do not purport to deal with the stockholder nor is admission of the corporation or its continuance in business anywhere conditioned upon his assent, nor in fact do such statutes contemplate it. As said before, the statutes relate to the corporation itself. Hence the stockholder is bound only to the extent that the corporation represents him. The general rule is that a corporation is not an agent of its stockholders as individuals. 14 C. J. 57. In Wisconsin it has been held that the books of account and papers of a corporation are not competent evidence of the value of shares therein, in a proceeding to assess an inheritance tax on the transfer of the shares. State v. Porter (Wis.) 190 N. W. 473. Nor may a corporation be compelled to produce its books and papers for a similar purpose. State v. Carpenter, 129 Wis. 180, 108 N. W. 641, 8 L. R. A. (N. S.) 788. These decisions rest on the theory that the contents of such books are the equivalent of declarations by third parties, and hence hearsay evidence only.

But it is not deemed necessary to determine the extent to which the corporation is the agent of its stockholders. It seems clear, assuming an agency exists for some purposes, that it does not extend to validly binding the stockholder to the assignment of a new and additional situs to his own separate property, viz. his shares, for the purpose of permitting the state to levy a transfer tax upon them in the event of the demise of the owner. That, it seems to me, is entirely foreign to any agency which may be reasonably claimed to exist in the corporation.

[10, 11] Again, "the charter and governing laws of the state in which the corporation is created determine the rights and liabilities of stockholders." 14a C. J. 1235; Canada Southern Ry. Co. v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363, 27 L. Ed. 1020; Hudson River Pulp Co. v. Warner, 99 Fed. 187, 39 C. C. A. 452; Leyner Engineering Works v. Kempner (C. C.) 163 Fed. 605; Glenn v. Liggett, 135 U. S. 548, 10 Sup. Ct. 867, 34 L. Ed. 262. The reason for the rule is that the stockholder has agreed to the terms of the corporation's constitution. Crofoot v. Thatcher, 19 Utah, 212, 57 Pac. 171, 75 Am. St. Rep. 725. In Thomas v. Matthiessen, 232 U. S. 235, 34 Sup. Ct. 312, 313 (59 L. Ed. 577), it was said:

"We agree that without authority from the stockholder a corporation cannot make him answerable in a way not contemplated by the charter."

Proceeding, the opinion points out how in that case the stockholder had assented to a different liability, and continues:

"And while the statutes of California cannot force an agent upon a foreign principal, still, if he has created such an agency in advance, he has come within the jurisdiction by his agent, as in other cases of contract made within a state from outside, and will be bound."

From the case last cited, it is to be gathered, I take it, that assent of a stockholder to submit himself to a new liability may be found outside of the corporation's charter, but not in the mere submission of

the corporation alone to the statutes of the admitting state. In the instant case, at its present stage at least, we have no question of the assent of the decedent based on any of his acts.

Finally, attention should be called to the fact that, among the corporations whose stock the plaintiffs' decedent died possessed of the transfer of which was subjected to the tax involved here, is the Great Northern Railway Company. That corporation is one of a class expressly excepted from the requirements of the act relating to foreign corporations. Section 1770b, Wis. Stats. This indicates that the imposition of the transfer tax by the law under consideration is not coincident with, but broader than, any legislative attempt to condition the entrance or continuance of foreign corporations. The theory of this tax law is undoubtedly the one first emphasized by counsel for defendant, that a stockholder owns an undivided interest in the property of the corporation, and that the presence of the corporation and its property within the state, gives the state the necessary jurisdiction. In fairness to counsel for the defendants it should be noted that they have planted themselves on that ground from the first; but the court, in its search for means satisfactory to it to sustain the law under consideration, called for additional argument discussing the power of the state over foreign corporations as a possible source of jurisdiction.

But, upon consideration, I am convinced that the mere relationship of a stockholder to a foreign corporation which seeks, gains, and continues in the right to do business and own property within the state, does not authorize the corporation effectively to give the shares of the stockholder a situs within the state. Viewed either from the standpoint of the corporation or of the stockholder, it follows necessarily that the state has never had that jurisdiction over either the shares or the decedent necessary to validly change the status of the shares from the distinct property of the decedent, independent of the corporation's property in Wisconsin, to represent an undivided interest in such property, having a situs within the state. Without such change the shares have their situs in Massachusetts, and in the states where the corporations were created, but none in Wisconsin, and it follows that the transfer thereof may be fully completed without the slightest reliance upon the laws of Wisconsin, and that it was without jurisdiction to impose the tax in question.

The demurrer of the defendant Johnson, state treasurer, will be sustained, and that of the other defendants overruled.